**CAYMAN EXPLORATION CORPORA-
TION, a Delaware Corporation,
Plaintiff–Appellant,**

v.

**UNITED GAS PIPE LINE COMPANY,
a Delaware Corporation,
Defendant–Appellee.**

No. 87–1176.

United States Court of Appeals,
Tenth Circuit.

April 26, 1989.

Steven M. Harris, William P. McGinnies, and James C. Thomas of Doyle & Harris, Tulsa, Okl., for plaintiff-appellant.

H. Bruce Golden, Adrian L. Steel, Jr., Marc Gary, and Patricia A. McCoy of Mayer, Brown & Platt, Houston, Tex., John L. Arrington, Jr., Robert A. Huffman, Jr., and Caroline B. Benediktson of Huffman, Arrington, Kihle, Gaberino & Dunn, Tulsa, Okl., W. DeVier Pierson and James M. Costan of Pierson, Semmes and Finley, Washington, D.C., of counsel, for defendant-appellee.

Before McKAY, MOORE and EBEL, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Cayman Exploration Corp. ("Cayman") appeals the district court's dismissal with prejudice under Fed.R.Civ.P. 12(b)(6) of its claims against United Gas Pipe Line Co. ("United") for violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (1982), and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 (1982). We affirm the district court's dismissal.

I.

Cayman sued United in the federal district court for the Northern District of Oklahoma alleging: (1) a price-fixing conspiracy in violation of section 1 of the Sherman Act; (2) RICO violations predicated on mail fraud under 18 U.S.C. § 1341 (1982); (3) breach of contract; and (4) tortious breach of contract. There is no diversity of citizenship between the parties because both are incorporated under the laws of the State of Delaware. Consequently, the first two causes of action provide the bases for federal court jurisdiction; the last two are pendent state claims. For violations of the federal antitrust and RICO statutes, Cayman sought treble damages, costs, and attorneys fees. Plaintiff also sought actual and punitive damages on its two pendent state law claims.

United moved for dismissal for failure to state a claim. Cayman amended its complaint and attempted to initiate discovery. United again moved for dismissal, and the court referred the matter to a magistrate for recommendation. The magistrate recommended dismissal pursuant to Fed.R. Civ.P. 12(b)(6) because he concluded that Cayman had not stated a federal statutory cause of action for either an antitrust viola-

tion or RICO violation, the bases of the court's subject matter jurisdiction. The district court affirmed the magistrate's recommendation of dismissal.[1]

## II.

"The sufficiency of a complaint is a question of law which we review *de novo.*" *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986). Dismissal pursuant to Fed.R.Civ.P. 12(b)(6) "requires a legal determination that plaintiff can prove no set of facts in support of its claim that would entitle it to relief." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In our review, "[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). We recognize that "'[t]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim,'" *Morgan,* 792 F.2d at 978 (quoting *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381 (5th Cir.1985), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 2007, 100 L.Ed.2d 237 (1988)), and that granting a motion to dismiss is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Morgan,* 792 F.2d at 978. We nevertheless conclude that the district court properly dismissed Cayman's claims under Rule 12(b)(6).

## III.

The court's Order makes it amply clear that the court was conscious of the high standard a defendant must meet in order to prevail in a motion to dismiss for failure to state a claim. Nonetheless, the district court correctly noted that "the complaint must allege facts sufficient, if they are proved, to allow the court to conclude that claimant has a legal right to relief." *Perington Wholesale, Inc. v. Burger King Corp.,* 631 F.2d 1369, 1373 (10th Cir.1979). With respect to the antitrust claim, the court concluded that the amended complaint was deficient because it alleged no facts of agreement or conspiracy in restraint of trade or injury to competition. Similarly, the RICO claim was defective because the complaint failed to allege mail fraud with particularity and because it alleged no facts of a pattern of racketeering activity.

On appeal, plaintiff argues strenuously that the policies which support "notice pleading" under the Federal Rules of Civil Procedure justify its minimalist approach in pleading facts. However, plaintiff misapprehends the thrust of the district court's determination: Not only did the court object to the paucity of actual facts alleged in the complaint, it also found that plaintiff's allegations were *legally insufficient* to state a claim. We find it unnecessary to specify how many facts *are* sufficient to state a claim under our system of pleading[2] because we agree with the trial court that the plaintiff clearly failed to state a legally cognizable claim.

### A. *Antitrust claims.*

Section 1 of the Sherman Act proscribes contracts, combinations or conspiracies in restraint of trade. 15 U.S.C. § 1 (1982). Under section 1 such "agreements" may be

---

**1.** The magistrate suggested that plaintiff pursue its pendent claims in state court. Cayman subsequently refiled its claims for breach of contract and tortious breach of contract in Oklahoma state court where it is pursuing discovery. *Cayman Exploration Corp. v. United Gas Pipe Line Corp.,* No. CJ–87–139 (District Court for Tulsa County, Okla., filed Jan. 8, 1987).

**2.** We note, however, that in spite of the liberal pleading requirements of the Federal Rules of Civil Procedure, courts have recognized that "[t]he heavy costs of modern federal litigation, especially antitrust litigation, and the mounting caseload pressures on the federal courts, counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 654 (7th Cir.1984). As a result, courts may require some minimal and reasonable particularity in pleading before they allow an antitrust action to proceed. *See Associated Gen. Contractors of Calif., Inc. v. California State Council of Carpenters,* 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 903 n. 17, 74 L.Ed.2d 723 (1983).

illegal if (1) their purpose or effect is to create an *unreasonable* restraint of trade, *or* (2) they constitute a *per se* violation of the statute. *See Times–Picayune Publishing Co. v. United States*, 345 U.S. 594, 614, 73 S.Ct. 872, 883, 97 L.Ed. 1277 (1953). Cayman made no attempt to establish that United's practice unreasonably restrains trade. Consequently, the sufficiency of Cayman's complaint depends on one of two determinations: (1) whether it has succeeded in stating a claim of *per se* illegality in accordance with prior precedent,[3] or (2) whether this court concludes that United's "practice facially appears to be one that would always or almost always tend to restrict competition and decrease output" in order to justify finding a new type of *per se* violation. *Broadcast Music, Inc. v. CBS*, 441 U.S. 1, 19–20, 99 S.Ct. 1551, 1562, 60 L.Ed.2d 1 (1979).

### 1. Vertical price-fixing.

■ In order for a complaint to adequately state a vertical price-fixing violation (AKA "resale price maintenance"), plaintiff must allege at least *some* facts which would support an inference that the parties have agreed that one will set the price at which the other will *resell* the product or service to third parties. *See Albrecht*, 390 U.S. at 149, 88 S.Ct. at 871; *Sitkin Smelting & Ref. Co. v. FMC Corp.*, 575 F.2d 440, 446 (3d Cir.), *cert. denied*, 439 U.S. 866, 99 S.Ct. 191, 58 L.Ed.2d 176 (1978) (violation is "agreement to fix the price to be charged in transactions with third parties, not between the contracting parties themselves"). The critical determination is whether the agreement deprives a trader of the ability to exercise its own judgment in "making independent pricing decisions." *World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1476 (10th Cir.), *cert. denied*, 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985) (quoting *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 762, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984)).

■ At best, Cayman alleged that United endeavored to coerce sellers (including Cayman) to accept lower than contract prices by systematically refusing to honor contractual "take-or-pay" clauses and by purchasing natural gas from Canadian suppliers. The district court noted that Cayman made no allegation that United was restricting resale prices to consumers, only that United attempted to fix the price stated in the gas purchase contract. We conclude that these allegations state a claim for breach of contract, but are insufficient to state a claim of vertical price-fixing. The district court correctly refused to transform a state breach of contract claim into a *per se* violation of federal antitrust laws.

■ Not only is there no *per se* violation under existing precedent, we hold that this case does not warrant the extension of *per se* illegality to United's alleged activities. The test for determining whether an alleged business practice not previously covered by *per se* illegality is a *per se* violation is "whether the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output ... or instead one designed to 'increase economic efficiency and render markets more, rather than less, competitive.'" *Broadcast Music, Inc.*, 441 U.S. at 19–20, 99 S.Ct. at 1562 (quoting *United States v. United States Gypsum Co.*, 438 U.S. 422, 441 n. 16, 98 S.Ct. 2864, 2875 n. 16, 57 L.Ed.2d 854 (1978)). The *per se* rule's conclusive presumption that the restraint is unreasonable should not be applied to a challenged practice until "experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it." *Arizona v. Maricopa County Medical Soc'y*, 457 U.S. 332, 344, 102 S.Ct. 2466, 2473, 73 L.Ed.2d 48 (1982). Consequently, before this court adopts a *per se* classification for the conduct of which Cayman complains, we must apply the Rule of Reason.

---

**3.** Cayman alleged two types of illegal *per se* conduct: (1) vertical price-fixing, *see Albrecht v. Herald Co.*, 390 U.S. 145, 151–53, 88 S.Ct. 869, 872–73, 19 L.Ed.2d 998 (1968), and (2) horizon-tal price-fixing, *see United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 223–24, 60 S.Ct. 811, 844, 84 L.Ed. 1129 (1940).

*National Soc'y of Professional Eng'rs v. United States,* 435 U.S. 679, 688, 98 S.Ct. 1355, 1363, 55 L.Ed.2d 637 (1978) (The Rule of Reason "focuses directly on the challenged restraint's impact on competitive conditions.").

Here, Cayman has failed to allege any facts in support of its claim that United's actions have an anti-competitive market effect. Cayman did not allege that United attempted to force producers to accept less than *market* price; only that United attempted to force producers to accept less than *contract* price. Breach of contract is not inherently anti-competitive, and may, in fact, be economically efficient in certain circumstances. In those cases, contract law provides adequate remedies for the disruption of the non-breaching party's reasonable expectations. As we have previously stated, "[w]e adhere to the view that the antitrust laws should not restrict the autonomy of independent businessmen when their activities have no adverse impact on the price, quality and quantity of goods and services offered to the consumer." *Westman Comm'n Co. v. Hobart Int'l, Inc.,* 796 F.2d 1216, 1220 (10th Cir. 1986), *cert. denied,* ── U.S. ──, 108 S.Ct. 1728, 100 L.Ed.2d 192 (1988).

2. Horizontal price-fixing.

Cayman's amended complaint alleges the following: "Within the industry, there is a common knowledge that concerted action is contemplated and invited for all transmission companies to uniformly breach contracts with producers with an object and purpose of forcing producers to accept lower prices for natural gas; United has adhered to and participated in this price fixing conspiracy which is illegal *per se* under Section 1 of the Sherman Act."

▆ To state a claim of horizontal price-fixing, plaintiff must allege: (1) the existence of an agreement, combination or conspiracy, (2) among actual competitors (*i.e.,*

at the same level of distribution), (3) with the purpose or effect of "raising, depressing, fixing, pegging, or stabilizing the price of a commodity" (4) in interstate or foreign commerce. *See Socony–Vacuum Oil Co.,* 310 U.S. at 216–19, 60 S.Ct. at 841–42; *see also National Soc'y of Professional Eng'rs v. United States,* 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978).

▆ In the absence of an explicit agreement, conspiratorial conduct may be established by circumstantial evidence. *Loew's, Inc. v. Cinema Amusements, Inc.,* 210 F.2d 86, 93 (10th Cir.), *cert. denied,* 347 U.S. 976, 74 S.Ct. 787, 98 L.Ed. 1115 (1954). However, even conscious parallel business behavior, standing alone, is insufficient to prove conspiracy. *Theatre Enterprises, Inc. v. Paramount Film Distrib. Corp.,* 346 U.S. 537, 541, 74 S.Ct. 257, 259, 98 L.Ed. 273 (1954). The antitrust plaintiff who relies on a theory of "conscious parallelism" must establish that "defendants engaged in consciously parallel action ... which was contrary to their economic self-interest so as not to amount to good faith business judgment." *Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 559 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). Thus, the conspiracy allegation will fail if there is an independent business justification which explains the alleged conspirators' conduct.

▆ Cayman did not identify the alleged conspirators, when or how they functioned, or the nature and extent of United's participation in the alleged conspiracy. Moreover, Cayman failed to allege *any* facts which would support an inference that the alleged actions by gas transmission companies would be contrary to their economic interests absent an agreement.[4] We hold that the district court properly concluded that Cayman's amended complaint did not state a claim of horizontal price-fixing.

---

**4.** In fact, the economic dislocation which has characterized the natural gas market since the early 1980's supports the inference that efforts by transmission companies to obtain lower prices from gas producers is an entirely rational response to current conditions in which established contract prices are often considerably above market prices. See background discussion in *Garshman v. Universal Resources Holding, Inc.,* 625 F.Supp. 737 (D.N.J.1986).

## B. *RICO*

■ Cayman's amended complaint alleges that United "has knowingly sent correspondence and communications through the U.S. mails on more than two occasions with the specific design to assert a false position, known to be false, with the specific intent to compel plaintiff" to relieve United of its take-or-pay contract. According to Cayman's complaint, United made misrepresentations and adopted knowingly false positions such as "positions of force majeure which have no basis in fact." Cayman also alleged that United (in concert with certain unnamed individuals and companies) conspired to conduct its affairs through and derive income from a pattern of racketeering activity. Cayman asserts that this conduct constitutes mail fraud and a pattern of racketeering activity under RICO.

To survive a Rule 12(b)(6) motion, a civil RICO claim must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). The district court determined that Cayman's amended complaint failed to state a claim under RICO because the complaint *did not* (1) allege the predicate racketeering activity, mail fraud, with particularity under Rule 9(b), Fed.R.Civ.P., or (2) allege sufficient facts of a pattern of racketeering activity.[5]

Rule 9(b), Fed.R.Civ.P., provides in pertinent part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Every circuit which has examined this issue has found that Rule 9(b) is applicable to RICO predicate acts based on fraud. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674 (6th Cir.1988); *Durham v. Business Management Assocs.*, 847 F.2d 1505, 1511–12 (11th Cir.1988); *Saporito v. Combustion Eng'g, Inc.*, 843 F.2d 666, 675 (3d Cir.1988); *New England Data Servs. v.*

*Becher*, 829 F.2d 286, 289–90 (1st Cir.1987); *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Courts have differed, however, concerning the harshness of the outcome when Rule 9(b) is not satisfied. *Compare Alan Neuman Prods., Inc. v. Albright*, 862 F.2d at 1392 (failure to allege mail fraud with particularity fatal to the RICO cause of action) *with Saporito v. Combustion Eng'g, Inc.*, 843 F.2d at 675 (complaint failed to allege predicate fraud with sufficient particularity but court gave appellants leave to amend); *New England Data Servs. v. Becher*, 829 F.2d at 289–90 (Rule 9(b) applies but where information is in exclusive control of defendant, trial court must determine whether the claim as presented warrants further discovery and amendment).

■ We recognize that the policy of simplicity in pleadings which underlies the Federal Rules of Civil Procedure requires a court to read Rule 9(b)'s requirements in harmony with Rule 8's call for a "short and plain statement of the claim" which presents "simple, concise, and direct" allegations. Fed.R.Civ.P. 8. Nevertheless, we believe that the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts. We believe this is particularly important in cases where the predicate fraud allegations provide the only link to federal jurisdiction. Thus, we hold that Rule 9(b) requires particularity in pleading RICO mail and wire fraud.

We conclude that the district court properly applied Rule 9(b) in evaluating Cayman's RICO complaint. We further hold that the amended complaint did not allege the predicate mail fraud acts with sufficient particularity in order to survive dismissal on this basis. We do not, however, consider dismissal in these types of cases to be a hard and fast rule. The trial court has discretion instead to permit amendment

---

5. Because we dispose of the RICO claim under Rule 9(b), we need not reach whether Cayman alleged sufficient facts of a pattern of racketeering activity.

of the defective pleadings if the circumstances warrant it. In this case, we do not believe the court abused its discretion in disallowing further amendments and dismissing the complaint.

AFFIRMED.