**VNA PLUS, INC. Plaintiff,**

v.

**APRIA HEALTHCARE GROUP, INC., and Apria Healthcare, Inc. Defendants.**

**Civil Action No. 98–2138–EEO.**

United States District Court, D. Kansas.

Nov. 23, 1998.

Lawrence A. Rouse, William D. Beil, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for plaintiff.

Todd Ruskamp, Joseph G. Matye, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Ellen S. Robbins, Sidley & Austin, Chicago, IL, Robert Fabrikant, Richard T. Peters, Matthew E. Sloan, Sidley & Austin, Los Angeles, CA, for defendants.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This matter is before the court on defendants' motion for judgment on the pleadings (Doc. # 6). After careful consideration of the parties' briefs, the court is prepared to rule. As an initial matter, the court has determined that oral argument would not be of material assistance in resolving the instant motion. Accordingly, defendants' request for oral argument is denied. For the reasons set forth below, defendants' motion for judgment on the pleadings will be granted in part and denied in part.

### Factual Background

The following is a brief summary of the factual allegations in plaintiff's amended complaint. Plaintiff VNA Plus, Inc. ("VNA Plus") is in the business of providing home health care products and related services to patients served by VNA Plus in such patients' homes. Until July 1995, Homedco, Inc. ("Homedco") engaged in a similar business. In July 1995, defendants Apria Healthcare Group, Inc., and Apria Healthcare, Inc., were formed as a result of a merger of Homedco and Abbey Healthcare Group.

On January 1, 1995, VNA Plus and Apria [1] executed a Billing and Collection Contract whereby Apria agreed to bill Medicare, Medicaid, and third-party payors on behalf of VNA Plus in accordance with all applicable laws and regulations. On January 1, 1995, VNA Plus and Apria also executed a Discount Purchase and Sale Agreement ("Discount Agreement") whereby Apria agreed to sell to VNA Plus home health care products and related services listed on a certain price list. The Discount Agreement subsequently was modified to provide that Apria would not receive fees under the Discount Agreement for any products or services for which Apria failed to request or receive reimbursement from Medicare, Medicaid, or a third-party payor because of Apria's failure to comply with the applicable rules or regulations.

VNA Plus has brought the instant action asserting that Apria fraudulently submitted claims for reimbursement on behalf of VNA Plus to Medicare, Medicaid, and other third-party payor insurance companies, and that Apria manipulated and falsified charges for products sold or rented in connection with the Discount Agreement. VNA Plus alleges violations of RICO, breach of contract, breach of fiduciary duty, fraud, negligence, tortious interference with contract, conversion, and that it is entitled to an accounting. Apria has moved for judgment on the pleadings with respect to all of VNA Plus' claims, except for the breach of contract, tortious interference with contract, and conversion claims.

### Standards For Motions For Judgment On The Pleadings

Defendants' motion for judgment on the pleadings is governed by the same standards

---

1. The contract actually was executed between VNA Plus and Homedco. For convenience, however, the court will refer to Homedco and defendants Apria Healthcare Group, Inc. and Apria Healthcare, Inc. collectively as Apria.

as a motion to dismiss for failure to state a claim upon which relief can be granted. *See Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir.1992). A court judges the sufficiency of the complaint by accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of plaintiff. *See Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987). "[T]he court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). The issue in resolving a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### *Requirements For Pleading Fraud*

■ Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of Rule 9(b) is to enable a defending party to prepare an effective response to charges of fraud and to protect the defending party from unfounded charges of wrongdoing which might injure its reputation and goodwill. *See N.L. Indus., Inc. v. Gulf & Western Indus., Inc.*, 650 F.Supp. 1115, 1129–30 (D.Kan.1986). Rule 9(b) is to be read in harmony with the simplified notice pleading provisions of Rule 8. *See Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1362 (10th Cir. 1989). Thus, to plead a fraud claim, plaintiff must describe the circumstances of the fraud, *i.e.*, the time, place, and content of the false representation; the identity of the person making the representation; and the harm caused by plaintiff's reliance on the false representation. *See Smith v. MCI Telecomm. Corp.*, 678 F.Supp. 823, 825 (D.Kan. 1987). Stated differently, Rule 9(b) requires plaintiff to set forth the "who, what, where, and when" of the alleged fraud. *Nal II, Ltd. v. Tonkin*, 705 F.Supp. 522, 525–26 (D.Kan. 1989).

### *Analysis*

■ Plaintiff first argues that Apria's motion is premature because the pleadings are not "closed" as required by rule 12(c). At the time Apria filed the instant motion, Apria had filed its answer and counterclaim but VNA Plus had not filed a reply to Apria's counterclaim. On June 18, 1998, VNA Plus filed its reply to Apria's counterclaim and the pleadings accordingly were "closed" as of that date. On June 19, 1998, VNA Plus filed its opposition memorandum to Apria's motion. Although VNA Plus technically is correct that Apria's motion was premature, the court nevertheless will construe Apria's motion as being reasserted on June 18, 1998, after VNA Plus filed its reply. VNA Plus has not alleged, and the court cannot find, any potential prejudice by having the court decide Apria's motion at this time. *See McMahan v. Cornelius*, 756 F.Supp. 1156, 1160 (S.D.Ind.1991) (ruling on defendants' motion "as if it had been renewed after the pleadings were closed, that is, after the filing of plaintiffs' reply").

■ VNA Plus also argues that Apria's motion is improper because Apria has not requested judgment on the pleadings with respect to all of the counts of VNA Plus' complaint. By analogy to the provisions of rule 56, we find that a motion for partial judgment on the pleadings is appropriate. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, at 537 (citing *Chi–Mil Corp. v. W.T. Grant Co.*, 70 F.R.D. 352 (E.D.Wis.1976)).

### I. RICO Claim (Count I).

■ In count I, VNA Plus alleges that Apria violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). To state a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir.1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

■ We start by analyzing what constitutes a RICO "enterprise." The RICO statute provides that the term enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated

in fact although not a legal entity." 18 U.S.C. § 1961(4). Even a commercial contract can serve as the basis of a RICO enterprise. *See River City Mkts., Inc. v. Fleming Foods West, Inc.,* 960 F.2d 1458, 1462 (9th Cir.1992) ("Virtually every business contract can be called an 'association in fact.'"); *Loma Linda Univ. Med. Ctr., Inc. v. Farmers Group, Inc.,* No. Civ-S-94-0681 WBS/JFM, 1995 WL 363441, at \*2 (E.D.Cal. May 15, 1995) (noting that "contractual relationships can establish a RICO enterprise").

■ VNA Plus alleges that the RICO enterprise was the "Apria/VNA Plus business" and that the enterprise "had the common or shared purpose to provide home health care products and related services to patients in such patients' homes for profit." Am. Compl. ¶ 18. Apria argues that the enterprise alleged in the complaint is merely a description of VNA Plus' normal business activities and therefore the alleged enterprise is limited to VNA Plus' individual business. Apria relies on the fact that VNA Plus has not alleged that the parties entered into a joint venture agreement, partnership agreement or otherwise agreed to share profits or losses, or that the purported enterprise conducted any business separate and distinct from the normal business operations of VNA Plus. It is well established that no formal legal entity is required to create a RICO enterprise—an informal association between two contracting businesses will suffice. *See River City Mkts.,* 960 F.2d at 1461; *Atlas Pile Driving Co. v. DiCon Financial Co.,* 886 F.2d 986, 995 (8th Cir.1989). Thus, the court will accept plaintiff's allegation that the enterprise was the "Apria/VNA Plus business" with the common purpose as stated above. *See* Am. Compl. ¶ 18. Although this "enterprise" had a very similar, if not identical, purpose as the purpose of VNA Plus' individual business, the court will nevertheless evaluate the sufficiency of plaintiff's allegations based on the combined business of Apria and VNA Plus.[2]

### A. Apria's Participation In The Enterprise.

■ The RICO statute is aimed at those who "conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs." 18 U.S.C. § 1962(c). Apria contends that VNA Plus has not alleged facts demonstrating that Apria conducted or participated in the affairs of the RICO enterprise. Apria argues that providing services for the enterprise is insufficient to establish conduct of or participation in the enterprise. In *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court addressed the issue of how much participation in the RICO enterprise is required before one can be held liable. The Court held that in order "to participate" in the enterprise "one must have some part in directing those affairs." *Id.* at 179, 113 S.Ct. 1163; *see id.* at 185, 113 S.Ct. 1163 ("one must participate in the operation or management of the enterprise itself"). Accordingly, the Court found that an accounting firm hired to do an audit and value a company's assets did not participate in the company's affairs within the meaning of RICO. *See id.* at 173–75, 186, 113 S.Ct. 1163.

Here, Apria is not an outside consultant, rather Apria is at the center of the alleged RICO enterprise. Apria and VNA Plus, based on their contractual relationships, constitute the entire enterprise. VNA Plus alleges that Apria was involved in the day-to-day operations of the VNA Plus/Apria enterprise by its direct control over the billing services and practices of the enterprise. At a minimum, VNA Plus has alleged that Apria had "some part in directing" the affairs of the Apria/VNA Plus enterprise. *Reves,* 507 U.S. at 179, 113 S.Ct. 1163. For the above reasons, we find that VNA Plus has adequately alleged that Apria participated in the RICO enterprise.

### B. Proximate Cause.

Apria claims that VNA Plus has alleged two fraudulent schemes—one relating to Ap-

---

**2.** It may be that VNA Plus ultimately will be unable to provide factual support for the VNA Plus/Apria business apart from VNA Plus' individual business. At this point, however, the court finds that VNA Plus is entitled to offer evidence to support the existence of the combined VNA Plus/Apria enterprise.

ria's alleged scheme to defraud VNA Plus by manipulating and falsifying charges in connection with the Discount Agreement which resulted in increased fee payments by VNA Plus to Apria, and the other relating to Apria's alleged scheme to defraud Medicare, Medicaid, and third-party payors by submitting false claims for benefits.[3] As to the first scheme, Apria argues that VNA Plus' injuries in connection with the Discount Agreement are unrelated to Apria's alleged participation in the conduct of the RICO enterprise. As to the second scheme, Apria argues that VNA Plus has no standing to assert a RICO claim because third parties, not VNA Plus, were the "targets" of the alleged fraud.

■ We start with Apria's argument that VNA Plus has not alleged proximate causation with respect to the first scheme. A plaintiff may sue under RICO for injury "by reason of a [RICO] violation." 18 U.S.C. § 1964(c). The Supreme Court has interpreted this language to mean that a plaintiff must establish that defendant's predicate acts actually and proximately caused plaintiff's injuries. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268–70, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). In *Holmes,* the Supreme Court held that traditional common law principles of proximate cause apply to RICO claims. *See id.* at 267–68, 112 S.Ct. 1311. Courts often evaluate proximate cause by ascertaining whether there is "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268, 112 S.Ct. 1311. Courts employ such a direct injury analysis based on several policy reasons which counsel against permitting recovery by remote plaintiffs. These reasons include: (1) the difficulty of proving damages to remote plaintiffs attributable to the alleged conduct rather than independent factors, (2) the necessity of adopting complicated rules apportioning damages among plaintiffs to obviate the risk of multiple recoveries for the same injuries, and (3) directly injured victims generally will bring suit to deter the injurious conduct

without the difficulties of a suit by a remote plaintiff. *See id.* at 269, 112 S.Ct. 1311.

■ While the Court in *Holmes* focused on the "directness" of an injury, the Court noted that recovery for indirect injury is not precluded under RICO. *See id.* at 272 n. 20, 112 S.Ct. 1311 (noting that the term "direct" is merely a reference to the proximate cause inquiry that is informed by the policy concerns discussed above); *see also Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143, 151 (5th Cir.1997) (noting that "RICO civil standing is not limited to only the immediate victim of a defendant's RICO violation"), *cert. granted and case dismissed as moot,* —— U.S. ——, 119 S.Ct. 442, 142 L.Ed.2d 442 (1998); *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1257 (7th Cir.1995) ("The Supreme Court observed ... that it did not mean to preclude all possibility of recovery for injury that was transmitted indirectly; the holding of *Holmes* is no more than that common law ideas about proximate causation inform the understanding of RICO."), *cert. denied,* 517 U.S. 1220, 116 S.Ct. 1847, 134 L.Ed.2d 948 (1996). In other words, VNA Plus is not required to plead that it was the primary or direct target of Apria's alleged fraudulent scheme. *See Khurana,* 130 F.3d at 151 (finding that plaintiff who may not have been the direct target of defendant's scheme could maintain RICO claim where plaintiff "pleaded the loss of a legitimate business opportunity resulting from the defendants' alleged racketeering acts"); *Mid Atlantic Telecom v. Long Distance Servs., Inc.*, 18 F.3d 260, 263 (4th Cir.) (holding that while plaintiff initially was not the direct victim of defendants' alleged scheme, discovery may show that defendants broadened the scope of the scheme to include plaintiff as a target), *cert. denied,* 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 283 (1994). VNA Plus must plead only that it was an intended target of the alleged scheme. *See Matter of EDC, Inc.,* 930 F.2d 1275, 1279 (7th Cir.1991); *Rodriguez v. McKinney,* 878 F.Supp. 744, 748 (E.D.Pa.1995) (citing *Prudential Ins. Co.*

---

**3.** VNA Plus argues that it has alleged only a single scheme which consisted of both attempts to defraud. We need not decide whether VNA Plus has alleged one or two schemes for pur-

poses of the instant motion because the result will be the same. For simplicity, however, we will evaluate the instant motion as if VNA Plus has alleged two separate schemes.

*v. United States Gypsum Co.,* 828 F.Supp. 287, 296 (D.N.J.1993)).

Here, VNA Plus has alleged that Apria devised a scheme to defraud VNA Plus in connection with the Discount Agreement between the parties. *See* Am. Compl. ¶ 21. Thus, VNA Plus clearly has alleged that it was both an intended and primary target of Apria's scheme. Apria argues, however, that VNA Plus' injuries with respect to the Discount Agreement were not proximately caused by Apria's participation in the alleged RICO enterprise. Apria reads the complaint as alleging that Apria participated in the conduct of the enterprise solely by rendering services as a billing and collection agent for VNA Plus. Apria simply reads the complaint too narrowly. First, as discussed above, the alleged enterprise is not limited to VNA Plus' individual business, but includes the combined Apria/VNA Plus business. Moreover, VNA Plus alleges that Apria participated in the Apria/VNA Plus business "by supervising directing, managing, and exercising primary responsibility for the billing services and practices of the enterprise ...." *See* Am. Compl. ¶ 19. Liberally construing the complaint, VNA Plus has alleged that Apria participated in the management of the enterprise both by acting as a billing and collection agent with respect to third parties and conducting billing services and practices under the Discount Agreement. The alleged fraud with respect to the Discount Agreement is based on Apria's "billing services and practices." *See, e.g.,* Am. Compl. ¶¶ 22(1) (alleging that Apria artificially inflated bills under the Discount Agreement); 22(m) (alleging that Apria submitted duplicate bills under the Discount Agreement); 22(n) (alleging that Apria submitted bills under the Discount Agreement knowing that VNA Plus would not receive reimbursement). For these reasons, we conclude that VNA Plus has sufficiently alleged that Apria's participation in the alleged enterprise proximately caused VNA Plus' injuries with respect to the Discount Agreement.

Next, we evaluate Apria's argument that VNA Plus is not within the "zone of interests" of the mail and wire fraud statutes with respect to Apria's alleged scheme to defraud third-party payors. Courts, as Apria does here, often consider a plaintiff's compliance with the zone of interests test in conjunction with the proximate cause inquiry. *See Holmes,* 503 U.S. at 287 n. 1, 112 S.Ct. 1311 (Scalia, J., concurring) (noting that the proximate cause requirement may simply be an element of the zone-of-interests test) (citation omitted). Apria relies primarily on the Seventh Circuit's decision in *Israel Travel, supra,* for its argument that VNA Plus is not within the zone of interests of the mail and wire fraud statutes. In *Israel Travel,* the court evaluated separately the proximate cause and zone of interests questions. On the proximate cause question, the Seventh Circuit followed the Fourth Circuit's reasoning in *Mid Atlantic Telecom* "that RICO [ ] allows suits when the predicate offenses influence customers and, derivatively, injure business rivals." 61 F.3d at 1257. On the zone of interests question, however, the Seventh Circuit held that "business rivals may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against customers, because only customers are the beneficiaries of the statutory protection." *Id.* at 1258 (following *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405–06 (9th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992)).[4]

In contrast to the plaintiff in *Israel Travel,* VNA Plus' alleged injuries are not derivative of potential claims by Medicare, Medicaid, or third-party payors. While the alleged fraud in *Israel Travel* was directed at the plaintiffs' customers, Apria's alleged fraud was that it fraudulently collected and submitted reimbursement claims on behalf of VNA Plus. *Cf. Israel Travel,* 61 F.3d at 1258 (holding that RICO "does not protect vendors to persons who may be deceived"). Given the close

---

4. At least one district court has declined to impose the additional "zone of interests" hurdle adopted by the Seventh Circuit after a plaintiff has satisfied the proximate cause inquiry. *See J & M Turner, Inc. v. Applied Bolting Tech. Prods., Inc.,* Nos. Civ. A. 96–5819, 95–2179, 1997 WL 83766, at *12–13 (E.D.Pa. Feb.24, 1997); *see also Pharmacare v. Caremark,* 965 F.Supp. 1411, 1421 (D.Hawai'i 1996) (rejecting Seventh Circuit's reasoning for additional zone of interests test as "myopic"). We need not reach the issue, however, because VNA Plus can satisfy both inquiries at this stage of the case.

relation between the proximate cause and zone of interests inquiries, we briefly examine whether VNA Plus has sufficiently alleged that Apria's conduct was the proximate cause of VNA Plus' injuries. VNA Plus alleges direct injuries resulting from Apria's alleged fraudulent collection and presentment of claims to third parties including (1) VNA Plus incurred attorney and consultant fees and other costs in connection with its efforts to identify and correct problems created by Apria's submission of reimbursement claims, (2) VNA Plus lost money in Medicare, Medicaid, and third-party payor reimbursements that it would have otherwise received, (3) VNA Plus was forced to write off a large amount of its accounts receivable and incurred significant collection agency fees in an effort to recoup accounts receivable caused by Apria's conduct, and (4) VNA Plus incurred liability exposure under the False Claims Act and the Civil Monetary Penalties Act. See Am. Compl. ¶¶ 25(b)-(e).

To illustrate how VNA Plus' alleged injuries differ from the injuries alleged by remote plaintiffs, we examine the policy reasons for the proximate cause requirement discussed in *Holmes*. First, Apria does not allege that VNA Plus' damages are attributable to any independent factors. *See Holmes*, 503 U.S. at 269, 112 S.Ct. 1311. While Apria allegedly fraudulently obtained additional money from third parties, Apria did so on behalf of VNA Plus, causing injury to VNA Plus. The chain of causation is quite direct—Apria's alleged fraudulent submission of claims increased VNA Plus' collection and administrative costs, exposed VNA Plus to liability under two federal statutes, and reduced reimbursements to VNA Plus from third-party payors. Next, there does not appear to be a risk of multiple recoveries for the same injuries. *See id.* Although third parties potentially could sue for a portion of plaintiff's losses,[5] third-party payors certainly could not sue for VNA Plus' administrative and collection costs incurred as a result of Apria's alleged fraud. Such damages certainly are not derivative of losses incurred by third parties. Finally, no other victim of Apria's alleged conduct can be expected to

sue to deter the injurious conduct. We conclude that VNA Plus is not a "remote" plaintiff suing for "derivative" injury in contrast to the plaintiffs in the cases cited by Apria. *See, e.g., Israel Travel, supra; Rehkop v. Berwick Healthcare Corp.,* 95 F.3d 285 (3d Cir.1996). For these reasons, we conclude that VNA Plus has adequately alleged that Apria's scheme with respect to third-party payors proximately caused VNA Plus' injuries.

We also find that VNA Plus is within the zone of interests of the mail and wire fraud statutes. The essential elements of a claim for mail or wire fraud include (1) a scheme to defraud, and (2) use of interstate mail or wire communications for the purpose of furthering the scheme. *See United States v. Hanson,* 41 F.3d 580, 583 (10th Cir.1994); *United States v. Galbraith,* 20 F.3d 1054, 1056 (10th Cir.), *cert. denied,* 513 U.S. 889, 115 S.Ct. 233, 130 L.Ed.2d 157 (1994). The mail and wire fraud statutes certainly were designed to protect those that were intended targets of fraudulent schemes. VNA Plus was an intended target of the fraudulent scheme because Apria allegedly submitted fraudulent claims on behalf of VNA Plus through interstate mail and wire communications to third-party payors. As explained with respect to proximate cause, VNA Plus has suffered direct injury from Apria's alleged predicate acts of mail and wire fraud such as administrative and collection costs. VNA Plus' allegations go beyond the allegations in *Israel Travel* in two important ways: (1) VNA Plus alleges that Apria acted on VNA Plus' behalf with respect to billing and collection services, a much closer relationship than typical "business rivals," and (2) VNA Plus alleges that Apria's conduct caused direct loss to VNA Plus, rather than "derivative" injury. In light of these differences and recognizing that "RICO is to be read broadly" and "liberally construed to effectuate its remedial purposes," we find that VNA Plus falls within the zone of interests of the mail and wire fraud statutes. *Sedima,* 473

---

**5.** According to plaintiff's complaint, however, third-party payors apparently passed on their

losses to VNA Plus by reducing reimbursements.

U.S. at 497–98, 105 S.Ct. 3275 (internal quotation omitted).

### C. *Rule 9(b).*

■ When pleading a RICO claim alleging mail or wire fraud as a basis for a predicate act, a plaintiff must also plead such allegations so as to satisfy the requirements of rule 9(b). *See Cayman*, 873 F.2d at 1362. The requirements of rule 9(b) are set forth above.

■ Apria argues that VNA Plus' allegations fail to comply with rule 9(b) because VNA Plus has failed to allege a single specific use of the United States mail or an interstate wire transmission in furtherance of the alleged schemes. While a plaintiff normally must plead specific instances of mail or wire fraud, such a requirement is relaxed where there are "numerous mailings of standardized documents containing identical false representations." *City of New York v. Joseph L. Balkan, Inc.*, 656 F.Supp. 536, 545 (E.D.N.Y.1987); *see Hurd v. Monsanto Co.*, 908 F.Supp. 604, 614 (S.D.Ind.1995) (noting that courts generally are "more lenient in sustaining pleadings where [as here] the transactions involved are complex or cover a long period of time") (internal citation omitted), *aff'd in part*, 107 F.3d 873 (7th Cir. 1997). Rule 9(b) may be satisfied if the complaint sufficiently identifies "[t]he time period involved and the content of the misrepresentations." *Id.* at 614.

■ The requirement that fraud shall be stated with particularity primarily is to allow the defendant to prepare an adequate responsive pleading. *See Sithon Maritime Co. v. Holiday Mansion*, 983 F.Supp. 977, 990 (D.Kan.1997); *Todaro v. Orbit Int'l Travel, Ltd.*, 755 F.Supp. 1229, 1234 (S.D.N.Y.1991); *United Nat'l Records, Inc. v. MCA, Inc.*, 609 F.Supp. 33, 38 (N.D.Ill.1984). Here, Apria was on sufficient notice of VNA Plus' allegations of mail and wire fraud to prepare a detailed answer. Apria has not suggested that it was unable to draft an adequate responsive pleading because of the lack of particularity in VNA Plus' RICO claims. Moreover, we find that VNA Plus has adequately alleged the time period involved and the content of the misrepresentations. Indeed, VNA Plus' complaint includes six pages identifying 18 different categories of alleged misrepresentations Apria made through interstate mail or wire transmissions between January 1995 and August 11, 1997. In such circumstances, we conclude that VNA Plus has adequately pled its RICO claim under rule 9(b).

For all of the above reasons, Apria's motion for judgment on the pleadings will be denied as to count I.

### II. Fiduciary Duty (Count III).

■ Plaintiff alleges that Apria owed a fiduciary duty to plaintiff because Apria took over the billing, collection, and reimbursement aspects of plaintiff's business and plaintiff relied on Apria's expertise in these areas. The basic elements of a fiduciary relationship under Missouri law [6] include:

> (1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

*Chmieleski v. City Prods., Corp.*, 660 S.W.2d 275, 294 (Mo.Ct.App.1983). A fiduciary relationship may exist even if not all of the above elements are satisfied. *See A.G. Edwards & Sons, Inc. v. Drew*, No. 72707, 978 S.W.2d 386, 394, 1998 WL 436053 (Mo.App.1998); *see also Matlock v. Matlock*, 815 S.W.2d 110, 115 (Mo.Ct.App.1991) ("There is no list of specific factors that must be found in order to determine that a fiduciary relationship existed.").

---

**6.** Apria argues that plaintiff's tort claims are governed by Missouri law. *See* Defs' Mem. (Doc. # 7) at 15 n. 5. Plaintiff concedes this point for purposes of the instant motion. *See* Plaintiff.'s Opp. Mem. (Doc. # 17) at 20 n. 10.

The existence of a business relationship by itself, however, does not create or give rise to a presumption of a fiduciary relationship. *See C & J Delivery, Inc. v. Emery Air Freight Corp.*, 647 F.Supp. 867, 875 (E.D.Mo. 1986); *Chmieleski*, 660 S.W.2d at 295.

VNA Plus alleges in its complaint that (1) it relied on and trusted Apria to carry out its duties in accordance with the law, (2) it lacked sufficient experience itself to continue to handle billing, collection, and reimbursement, (3) Apria informed plaintiff that it possessed a high level of expertise in these areas, and (4) Apria knowingly and voluntarily undertook fiduciary duties to plaintiff. *See* Compl. ¶¶ 34–36. Liberally construing plaintiff's complaint, the court finds that plaintiff has set forth several of the elements identified in *Chmieleski*—plaintiff was subservient to Apria with respect to billing, collection, and reimbursement, Apria managed at least one important aspect of plaintiff's business, *i.e.*, collection and reimbursement, plaintiff surrendered control/independence over its billing, collection, and reimbursement services to Apria, and plaintiff trusted and relied on Apria's expertise to perform these services. A fiduciary relationship could be found based on these allegations. *See Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F.Supp. 813, 841 (E.D.Pa.1993) ("A business association may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of the affairs to the other."). In essence, plaintiff alleges that a principal-agent relationship was created by the parties' contract, which simultaneously created a fiduciary relationship between the parties. *See Preferred Physicians Mut., Mgmt., Group v. Preferred Physicians Mut., Risk Retention*, 918 S.W.2d 805, 811 (Mo.Ct.App.1996) ("An agent is a fiduciary with respect to matters within the scope of his agency."); *see also* Restatement (Second) of Agency § 14 N, comment a ("In fact, most of the persons known as agents, that is brokers, factors, attorneys, collection agencies, and selling agencies are independent contractors as the term is used in the restatement ... since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the

services. However, they fall within the category of agents. They are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience."). In these circumstances, the court concludes that VNA Plus has adequately stated a claim against Apria for breach of fiduciary duty. Accordingly, defendants' motion for judgment on the pleadings on count III will be denied.

### III. Fraudulent And Negligent Misrepresentation Claims (Counts IV and V).

Plaintiff's fraudulent inducement and negligent misrepresentation claims center on four alleged statements made by Apria: (1) Apria represented that it possessed the highest level of expertise in the home health care products market, including expertise in billing and collecting services and the necessary expertise to train VNA Plus' employees, (2) Apria represented it possessed the necessary expertise to comply fully with regulations governing reimbursement claims submitted to Medicare, Medicaid, and other third-party payors, (3) Apria represented it owned a sophisticated computerized billing system that would insure prompt filing and payment of VNA Plus' reimbursement claims to Medicare, Medicaid, and other third-party payors, and (4) Apria represented that it would comply with all applicable federal and state laws and regulations in submitting reimbursement claims on behalf of VNA Plus. Apria argues that VNA Plus' fraudulent and negligent misrepresentation claims restate VNA Plus' breach of contract claim and the alleged misrepresentations were statements of opinion, not fact.

#### A. Restatement Of Contract Claim.

 It is well settled that a tort claim arising from a breach of contract may be maintained "only if the duty owed is superimposed by operation of law as an incident of the relationship between the parties rather than the contract." *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1216 (8th Cir.1973) (applying Missouri law), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). Missouri courts do allow plaintiffs, however, to maintain fraud claims "where the duty breached is exclusively inci-

dental to the contract." *Id.* In *Pandjiris, Inc. v. Sunshine Stainless Tank & Equip. Co.*, 655 F.Supp. 473 (E.D.Mo.1987), the buyer of industrial equipment attempted to assert a fraudulent misrepresentation counterclaim based on the seller's failure to deliver functional equipment in a timely manner. *See id.* at 474. The court granted summary judgment in favor of the seller finding that the seller had no duty to deliver the equipment "apart from that which arose pursuant to the [sales] contract." *Id.*

■ In the instant action, plaintiff alleges four separate misrepresentations by Apria. Apria's alleged representations regarding its computerized billing system and its future compliance with all applicable laws simply are restatements of Apria's obligations under the billing contract with VNA Plus. In count II, VNA Plus alleges that Apria was obligated under its agreements with VNA Plus "to bill, promptly and efficiently, the Medicare, Medicaid, and third-party payor insurance programs, as appropriate, in a manner consistent with its customary billing practices for its own patients" and "to not employ billing or collection practices that would violate any applicable federal, state, or local law." Am. Compl. ¶¶ 28(a), 28(b). In Count IV, VNA Plus alleges that Apria misrepresented that it "possessed a sophisticated computerized billing system that would insure prompt filing and payment from Medicare, Medicaid, or third-party payors" and that it "would comply with all applicable federal and state laws, rules and regulations in submitting claims on behalf of VNA Plus to Medicare, Medicaid, and third-party payors for reimbursement." Am. Compl. ¶¶ 41(b), 41(d). Given that the alleged tort duties imposed on Apria arose from its contracts with VNA Plus, the court concludes that Apria's alleged representations regarding its computerized billing system and its future compliance with all applicable laws may not form the basis of a separate fraudulent or negligent misrepresentation claim.

■ On the other hand, the court cannot find that Apria's alleged statements regarding its "expertise" are duplicative of its contractual obligations as a matter of law. Apria argues in its reply brief that the contract expressly states that Apria "has expertise in the business of billing and collecting" for industrial equipment home health care products and nursing services. The contract provision stating that Apria has expertise regarding billing and collecting services, however, contains no express representation by Apria of its expertise regarding (1) the home health care products market generally, (2) training of VNA Plus' employees, or (3) compliance with the regulations governing reimbursement claims submitted to Medicare, Medicaid, and other third-party payors. Although plaintiff's complaint is not entirely clear how the oral representations of expertise are different from the contractual representations of expertise, plaintiff will have the opportunity to set forth in more detail the representations which form the basis of its fraudulent and negligent misrepresentation claims. *See infra* section III.c.

Finally, VNA Plus argues that all four of the alleged misrepresentations may form the basis of a fraudulent misrepresentation claim because VNA Plus has alleged the existence of a fiduciary relationship. VNA Plus ignores that all four of the alleged misrepresentations concern statements by Apria to induce VNA Plus to enter into the contractual and fiduciary relationship. At the time of the alleged statements by Apria, a fiduciary relationship did not exist between Apria and VNA Plus. *Cf. White v. Mulvania*, 575 S.W.2d 184, 189 (Mo.1978) (noting that a breach of a promise made during the pendency of a fiduciary relationship may form the basis for a fraud claim).

### B. Statements Of Fact Or Opinion.

■ To maintain a claim for fraudulent or negligent misrepresentation, plaintiff must allege that the alleged misrepresentation is material. To be material, a representation must be a statement of fact, not opinion. *See Clark v. Olson*, 726 S.W.2d 718, 719–20 (Mo.1987). "[E]xpressions of opinion are insufficient to authorize a recovery for fraudulent misrepresentation because such expressions are deemed not to be material to a transaction." *Id.* (citing *Wofford v. Kennedy's 2nd St. Co.*, 649 S.W.2d 912, 915 (Mo.Ct. App.1983)). "Puffing of wares, sales propaganda, and other expressions of opinion are common, are permitted, and should be ex-

pected. Those in the marketplace should recognize and discount such representations when deciding whether to go through with a transaction." *Clark*, 726 S.W.2d at 720. There is a fine line distinction between statements of fact and statements of opinion which often "depends on the circumstances surrounding the representation and whether the statement can be objectively verified." *Sstech Railway Tech. Proprietary, Ltd. v. Herzog Servs., Inc.*, No. 94–6154–CV–SJ–6, 1996 WL 362956, at *6 (W.D.Mo. June 27, 1996) (citing *Clark*, 726 S.W.2d at 720).

■ In the instant action, Apria's statements of its "expertise" in the area of health-care regulation can be objectively verified. While VNA Plus has a very difficult evidentiary burden, Apria's representations may be actionable if the statements had no reasonable basis in fact. *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1093, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) (noting that many "conclusory terms in a commercial context are reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading"); *see also* Restatement (Second) of Torts § 539, comment a ("Frequently a statement which, though in form [of] an opinion upon facts not disclosed or otherwise known to their recipient, is reasonably understood as implying that there are facts that justify the opinion or at least that there are no facts that are incompatible with it."). Based solely on the pleadings, the court cannot conclude that Apria's statements regarding its "expertise" are not actionable as a matter of law.

C. *Plaintiff's Compliance With Rule 9(b).*

■ Plaintiff's allegations of fraud based on Apria's representations of "expertise" are too conclusory. Plaintiff must set forth the who, what, where, and when of the alleged fraud. *See Nal II*, 705 F.Supp. at 525–26. The lack of detail in plaintiff's complaint has made it very difficult for the court to ascertain if the alleged representations of "expertise" in plaintiff's fraud and contract claims are identical or different.

■ Leave to amend is a matter committed to the sound discretion of the district court. *See First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127 (10th Cir.1987). Leave to amend is to be freely given when justice so requires pursuant to Rule 15 of the Federal Rules of Civil Procedure. *See N.L. Indus., Inc.*, 650 F.Supp. at 1130. The court in its discretion will allow plaintiff to amend its complaint to conform to the requirements of rule 9(b) of the Federal Rules of Civil Procedure.

## IV. Fraudulent Concealment (Count IV).

■ In count IV, VNA Plus also alleges that Apria failed to disclose that it (1) overcharged VNA Plus for products sold or rented under the Discount Agreement and (2) failed to timely file and pursue claims for reimbursement in violation of the Billing and Collection Contract. *See Am. Compl.* ¶¶ 46(a), 46(e). Apria argues that these claims should be dismissed because the alleged duty arose from the contract between the parties. Plaintiff responds that its fraudulent concealment claim is based on Apria's duty to disclose material facts pursuant to the parties' fiduciary relationship. *See State ex rel. PaineWebber, Inc. v. Voorhees*, 891 S.W.2d 126, 129–30 (Mo.1995). As explained above, plaintiff has adequately stated a claim against Apria for breach of fiduciary duty. Therefore, the court finds that plaintiff's fraudulent concealment claim can go forward.

■ Apria also argues that plaintiff's claim of fraudulent concealment should be dismissed because plaintiff has failed to comply with rule 9(b). After reviewing plaintiff's complaint, the court concludes that plaintiff has adequately pled its claim of fraudulent concealment with particularity as required by rule 9(b). Plaintiff has specifically alleged the information which was not revealed to it by Apria at any time during plaintiff's relationship with Apria. *See Am. Compl.* ¶ 46. The court finds that plaintiff's allegations are sufficient to allow Apria to prepare an effective response to the charges.

For the above reasons, the court will deny Apria's motion for judgment on the pleadings with respect to plaintiff's fraudulent concealment claims in count IV.

## V. Negligence Claim (Count VII).

VNA Plus alleges that Apria was negligent in the performance of its duties and responsibilities to VNA Plus. *See* Am. Compl. ¶ 65. Apria argues that this claim should be dismissed because the duties Apria allegedly breached arose solely from its contractual obligations under the Billing and Collection Contract. As explained previously, however, VNA Plus has sufficiently alleged the existence of a fiduciary relationship between it and Apria in addition to the contractual relationship. VNA Plus' negligence claim apparently is based on Apria's alleged breach of its fiduciary duties to VNA Plus. While VNA Plus' negligence claim seems to be subsumed within its fiduciary duty claim, VNA Plus is allowed to plead alternative theories of recovery. Plaintiff may be precluded, however, from recovering under both theories, or even having both theories submitted to the jury. At this time, however, based on the limited briefing by the parties and the possibility that these claims are merely alternative theories of recovery, the court will allow both claims to go forward.

## VI. Accounting (Count IX).

A plaintiff can maintain an action for an accounting if the plaintiff can establish the existence of a fiduciary relationship. *See Dawson v. Dawson*, 645 S.W.2d 120, 129 (Mo.App.1982). As discussed above, plaintiff has sufficiently alleged a fiduciary relationship between it and Apria. Accordingly, defendant's motion for judgment on the pleadings on count IX will be denied.

IT IS THEREFORE ORDERED that defendants' motion for judgment on the pleadings is granted with respect to count V of plaintiff's amended complaint, granted in part and denied in part as discussed herein with respect to count IV of plaintiff's amended complaint, and denied with respect to counts I, III, VII, and IX of plaintiff's amended complaint.

IT IS FURTHER ORDERED that plaintiff is granted leave to amend its complaint with respect to its allegations of fraud based on Apria's representations of its expertise as set forth in counts IV and V of plaintiff's amended complaint. Plaintiff shall file an amended complaint, if it so desires, on or before December 15, 1998.