Georgeanna **GOTTSTEIN** and Robert E. Gottstein, Jr., Plaintiffs,

v.

**NATIONAL ASSOCIATION FOR THE SELF EMPLOYED**, et al., Defendants.

**Margaret Kingston and Kenneth L. Kingston**, Plaintiffs,

v.

**UICI and PFL Life Insurance Company**, Defendants.

Georgeanna Gottstein, et al., Plaintiffs,

v.

**National Association for the Self Employed**, et al., Defendants.

Nos. Civ.A. 98–2339–KHV, Civ.A. 98–2540–KHV, Civ.A. 98–2541–KHV.

United States District Court, D. Kansas.

June 18, 1999.

---

James D. Griffin, Todd A. Scharnhorst, Michael E. Callahan, Blackwell Sanders Peper Martin, LLP, Overland Park, KS, for plaintiffs.

Leonard R. Frischer, Bradley S. Russell, Frischer & Russell, Chtd., Overland Park, KS, for National Ass'n for Self Employed.

Lynn W. Hursh, Douglas R. Richmond, Orion Riggs, Derek E. Feagans, Armstrong Teasdale LLP, Kansas City, MO, for UICI.

Craig S. O'Dear, Juliet A. Cox, Bryan Cave LLP, Kansas City, MO, James David Brown, Winstead, Sechrest & Minick, P.C., Dallas, TX, Lynn S. McCreary, Bryan Cave LLP, Overland Park, KS, Charles A. Newman, Jason E. Maschmann, Bryan Cave LLP, St. Louis, MO, for PFL Life Ins. Co.

Derek E. Feagans, Armstrong Teasdale LLP, Kansas City, MO, for United Group Associates, Inc., Specialized Ass'n Services, Ltd.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on *Defendant PFL's Motion To Dismiss* (Doc. #17 in Case No. 98–2339), *Defendant PFL's Motion To Dismiss* (Doc. #14 in Case No. 98–2540), and *Defendant PFL's Motion To Dismiss* (Doc. #19 in Case No. 98–2541), all filed February 1, 1999. After carefully considering the parties' briefs, the Court is prepared to rule. For reasons set forth below, defendant's motions are sustained and plaintiffs are granted leave to amend their complaints.

### Factual Background

On August 3, 1998, Georgeanna and Robert E. Gottstein, Jr. filed their complaint in Case No. 98–2339 (the "Gottstein Complaint"). Nearly four months later, on November 24, 1998, Margaret L. and Kenneth L. Kingston filed their complaint in Case No. 98–2540 (the "Kingston Complaint"). That same day, the Gottsteins and the Kingstons joined forces by filing a class action complaint in Case No. 98–2541 (the "Class Complaint"). On March 15, 1999, the Court consolidated the three actions. *See Order* (Doc. #36) filed Mar. 16, 1999 in Case No. 98–2541. The following is a summary of plaintiffs' allegations in the three complaints.

In 1992, Georgeanna Gottstein completed an application for group health insurance coverage with PFL Life Insurance Company ("PFL"). The National Association for the Self–Employed ("NASE") had endorsed this policy. Ms. Gottstein paid $277 for the policy premium, $6 for monthly NASE dues and $95 for an administrative fee. PFL denied her application. In December 1992, Ms. Gottstein reapplied through a NASE representative and PFL issued her an individual policy. Ms. Gottstein alleges that UICI and NASE falsely represented (1) the scope of coverage under the policy, (2) that NASE was an independent not-for-profit corporation formed to protect the interests of the self-employed, and (3) that she had to be a

member of NASE before PFL would issue a policy. The Kingstons allege similar misconduct. In addition, they allege that they received a mailer which falsely stated that "NASE, through its negotiating power, had negotiated a favorable policy of health insurance for members of NASE."

Plaintiffs allege that prospective purchasers of insurance relied on the purported fact that NASE operated at arm's length from PFL and UICI. Ronald L. Jensen had formed NASE, however, as a not-for-profit association to endorse products and services sold by UICI, which Jensen also formed through its predecessor United Group Association, Inc. ("UGA"). UICI acted as an agent to sell insurance products. NASE endorsed certain insurance products which UICI sold and PFL underwrote. NASE, UICI and the "Insurance Center" that handled PFL policies all operated from the same address. Plaintiffs contend that defendants misled consumers to believe that a large, sophisticated and independent entity represented them to negotiate with various insurance carriers. Plaintiffs allege that PFL issued inadequate insurance policies and that PFL required consumers to purchase unnecessary NASE memberships.

PFL is a named defendant in plaintiffs' claims for fraud (Count II of the Class Complaint, Count I of the Gottstein Complaint), breach of fiduciary duty (Count III of the Class Complaint), and conspiracy to commit a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count VII of the Class Complaint, Count V of the Gottstein Complaint, Count II of the Kingston Complaint). Pursuant to Fed.R.Civ.P. 12(b)(6), PFL seeks to dismiss plaintiffs' complaints for failure to state a claim upon which relief may be granted.

### Legal Standards

A Rule 12(b)(6) motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." GFF Corp. v. Associated

Wholesale Grocers., Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir.1987). The issue in reviewing the sufficiency of plaintiff's complaint is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his claims. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991).

### Analysis

### I. RICO Claims

Plaintiffs claim that UICI and Jensen defrauded them under RICO, 18 U.S.C. §§ 1961–1965, when plaintiffs purchased unnecessary NASE memberships and inadequate health insurance policies. See Class Compl. Count VI (unnecessary NASE dues); Gottstein Compl. Count IV (inadequate policy); Kingston Compl. Count I (inadequate policy). Plaintiffs allege that PFL conspired with UICI and Jensen to further a scheme which told prospective customers that they needed to be members of NASE to purchase individual health insurance policies and that NASE was an independent body which had the power to negotiate favorable health insurance policies with insurance carriers. See Class Compl. Count VII; Gottstein Compl. Count V; Kingston Compl. Count II.

■ "The object of a RICO conspiracy must be to violate a substantive RICO provision." United States v. Hampton, 786 F.2d 977, 978 (10th Cir.1986). Plaintiffs must therefore allege a substantive

violation of RICO to maintain their conspiracy claim. A violation of RICO requires conduct of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c); *see Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 476, 139 L.Ed.2d 352 (1997); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

### A. *Statute Of Limitations*

■ The statute of limitations for a civil RICO claim is four years from the time the cause of action accrued. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). "[W]ith respect to each independent injury to the plaintiff, a civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern." *Bath v. Bushkin, Gaims, Gaines & Jonas,* 913 F.2d 817, 820 (10th Cir.1990) (quoting *Bivens Gardens Office Bldg., Inc. v. Barnett Bank,* 906 F.2d 1546, 1554–55 (11th Cir.), *cert. denied,* 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991)).

■ PFL argues that the statute of limitations began to accrue when plaintiffs received copies of their insurance policies because they are charged with knowledge of policy contents. PFL's argument is premature. Even if plaintiffs are charged with such knowledge, the allegations in the complaints do not establish that plaintiffs would have discovered that NASE membership was not required and that their policies were inadequate, or have been put on inquiry notice of these facts, by reading their policies. Without reviewing the policies, the Court cannot determine what notice (if any) they provided plaintiffs.

■ PFL argues alternatively that its statements to the Kansas Insurance Department ("KID") put plaintiffs on notice of their alleged injuries and that their injuries were part of a pattern. According to plaintiffs' complaints, PFL represented to the KID:

1. In July 1991, that the form IBMS 791 policy did not have any requirement that the insureds be a member of any group;

2. On February 26, 1992, that "[t]he NASE is not in existence primarily as a vehicle for 'group' insurance;"

3. On January 19, 1994, that "individual policy holders are not required to become members of the NASE;" and

4. On June 1, 1994, that "[a]ll of the endorsed Insurance plans available to NASE members require that they be members of NASE."

Class Compl. ¶ 82(a). PFL claims that plaintiffs had constructive knowledge of this and any other public information. *See PFL's Reply To Plaintiffs' Response To Its Motion To Dismiss* (Doc. # 52) filed Apr. 9, 1999 at 3 (citing *Maughan v. Southwest Servicing, Inc.,* 758 F.2d 1381, 1388 (10th Cir.1985)). PFL's reliance on *Maughan* is misplaced. In *Maughan,* the Tenth Circuit held that even if plaintiffs knew of various news articles, such knowledge was insufficient to establish as a matter of law that they knew or should have known of their causes of action against defendants. *See id.* at 1388. The court of appeals declined to decide whether plaintiffs generally are charged with knowledge of public records. *See id.* Finally, the Tenth Circuit noted that the issue of when a plaintiff knew or should have known of a cause of action generally is a question of fact for the jury. *See id.* at 1387.

■ Applying the reasoning of *Maughan,* the Court declines to adopt a blanket rule which charges plaintiffs with constructive knowledge of all public information including that of the KID. PFL has not cited any authority for the proposition that all public information should be treated equally. The accrual of a cause of action depends in part on the ease of discovery of the alleged miscon-

duct. *See Fujisawa Pharm. Co., Ltd. v. Kapoor,* 115 F.3d 1332, 1335 (7th Cir. 1997). A remote filing with a state insurance commission and a widespread media report should be treated differently for constructive notice purposes. Moreover, a policyholder must be aware of some suspicious circumstances before he or she is held to knowledge of all information filed with the state insurance department. *See Great Rivers Coop. v. Farmland Indus.,* 120 F.3d 893, 897 (8th Cir.1997) (insufficient evidence that investor in agricultural cooperative had duty to examine public records); *Corwin v. Marney, Orton Invests.,* 843 F.2d 194, 198 (5th Cir.) (same; investors in office building project), *cert. denied,* 488 U.S. 924, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988). Here, plaintiffs' awareness of suspicious circumstances before August 3, 1994 is not established as a matter of law by the allegations of their complaints.

### B. *Allegations Of Pattern Of Racketeering Activity*

PFL contends that plaintiffs have not alleged a pattern of racketeering activity with sufficient particularity as required by Fed.R.Civ.P. 9(b). In the Tenth Circuit, plaintiffs must allege with particularity each element of a RICO violation and its predicate acts of racketeering, a requirement which is justified by the threat of treble damages and injury to reputation. *See Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir.1992); Fed.R.Civ.P. 9(b). Moreover, "the Rule of pleading with particularity requires assertions of time, place, and contents of false representations ... [and] the identity of the person making the representation and what was obtained or given up thereby." *Meyer v. Cloud County Bank & Trust,* 647 F.Supp. 974, 975–76 (D.Kan.1986). In the context of corporate defendants, plaintiffs must identify the specific individuals who made the alleged misrepresentations. *See Kriendler v. Chemical Waste Mgm't, Inc.,* 877 F.Supp. 1140 (N.D.Ill.1995); *Western Gas Processors, Ltd. v. Enron Gas Pro-*

*cessing Co.,* No. 87–A–1472, 1988 WL 73307, at *4 (D.Colo. July 7, 1988).

■ Plaintiffs must allege at least two predicate acts to show a pattern of racketeering activity. *See Resolution Trust Corp. v. Stone,* 998 F.2d 1534, 1543 (10th Cir.1993). In the Class Complaint, plaintiffs allege several RICO predicate acts including that: (a) UICI misrepresented certain facts to the KID, (b) UICI misrepresented to prospective customers that it did not receive commissions and that it was independent, (c) UICI misrepresented to policyholders that they had to pay an administrative fee, (d) UICI orally misrepresented certain facts to customers and solicited unnecessary dues, and (e) UICI required that NASE dues and administrative fees be wired to NASE. *See* Class Compl. ¶ 82(a) –(e). Plaintiffs fail to allege in subparagraph (a) how UICI's representations to the KID furthered the alleged scheme. In their opposition brief, plaintiffs concede that they will not rely on these representations as predicate acts. In subparagraphs (b) through (e), plaintiffs fail to allege the time of the purported statements or the specific individual(s) who made the statements. In subparagraph (d), plaintiffs also fail to allege the content of the alleged oral misrepresentations. Plaintiffs' allegations of predicate acts in the Class Complaint are insufficient to satisfy the requirements of Fed.R.Civ.P. 9(b).

The individual Gottstein complaint is similarly deficient. Paragraphs 52(a), 52(b) and 52(d) of the Gottstein Complaint mirror the allegations of paragraphs 82(a), 82(b) and 82(e) of the Class Complaint, which do not meet the requirements of Fed.R.Civ.P. 9(b). The Gottsteins allege in paragraph 52(c) that UICI used the mails to defraud customers by luring them into presentations during which UICI agents orally misrepresented certain facts. Plaintiffs fail to set forth the time or content of the misrepresentations or the identity of the individual(s) who made the alleged misrepresentations. Accordingly,

the Court must dismiss Counts IV and V of the Gottstein Complaint for failure to set forth the RICO predicate acts with particularity.

 The individual Kingston complaint also fails to meet the requirements of Fed. R.Civ.P. 9(b). Paragraphs 15(a), 15(b) and 15(d) track paragraphs 82(a), 82(b) and 82(e) of the Class Complaint, and are deficient for the reasons discussed above. In paragraph 15(c), the Kingstons sufficiently allege the time, place, and content of the misrepresentations, as well as the identity of the individual who made the alleged statement. This allegation standing alone, however, establishes only a single predicate act. A single act is insufficient to establish a pattern of racketeering activity. See Stone, 998 F.2d at 1543 (at least two predicate acts required).

In sum, Counts VI and VII of the Class Complaint, Counts IV and V of the Gottstein Complaint, and Counts I and II of the Kingston Complaint are dismissed for failure to allege a "pattern" of racketeering activity under RICO.

Plaintiffs seek leave to amend Fed. R.Civ.P. 15. The Court shall freely give plaintiff leave to amend "when justice so requires." Fed.R.Civ.P. 15. Motions to amend are matters of discretion for the trial court, Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir.1991), and a refusal to grant leave to amend should normally be justified by factors such as futility, undue delay, undue prejudice to the non-moving party, or bad faith of the moving party. Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir.1993). Defendants do not object to plaintiffs' request to amend and the deadline for amending pleadings has not expired. The Court therefore grants plaintiffs leave to amend their complaints on or before June 30, 1999 (the deadline for motions to amend), in accordance with this order.

### C. Allegations Of A RICO Enterprise

 Plaintiffs allege two alternative RICO enterprises—NASE itself and an association-in-fact comprising NASE, PFL, UICI and UGA (the "Selling Machine" enterprise). PFL argues that plaintiffs' allegations of both enterprises are insufficient. Given that plaintiffs are granted leave to amend, the Court will address this argument. To plead the existence of an enterprise, plaintiffs must allege facts sufficient to show (1) "an ongoing organization with a decision-making framework or·mechanism for controlling the group;" (2) "various associates function as a continuing unit;" and (3) that the enterprise is separate from the pattern of racketeering activity. United States v. Sanders, 928 F.2d 940, 943–44 (10th Cir.) (adopting test in United States v. Riccobene, 709 F.2d 214, 223–24 (3d Cir.), cert. denied, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983)), cert. denied, 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991).

 PFL first argues that the Selling Machine enterprise lacks sufficient organizational structure or a mechanism for controlling the group. Although the hallmark of an enterprise is structure, it includes informal associations with only a minimal amount of structure. See United States v. Rogers, 89 F.3d 1326, 1337 (7th Cir.), cert. denied, 519 U.S. 999, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996); see also United States v. Coonan, 938 F.2d 1553, 1559 (2d Cir. 1991) ("Common sense suggests that the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure.") (citation and internal quotations omitted), cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992). "A RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." Rogers, 89 F.3d at 1337 (citation and internal quotations omitted); see United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (association in fact enterprise includes entities "associated together for a

**1220**

common purpose of engaging in a course of conduct"). The continuity of an informal association, along with differentiation among the roles of its members, can provide the requisite structure. *See Rogers,* 89 F.3d at 1337.

■ The Selling Machine enterprise meets these requirements. It is an ongoing structure comprised of three entities— NASE, PFL and UICI (formerly UGA)— with a common purpose of selling insurance products to self-employed individuals. Each entity has a separate role. UICI sells the policies, NASE endorses them, and PFL issues them. Plaintiffs allege that these entities jointly sold thousands of individual policies, and this allegation establishes the continuity of the association. Plaintiffs have alleged sufficient structure of the Selling Machine to constitute a RICO enterprise.

■ The NASE enterprise also satisfies these requirements. PFL argues that plaintiffs' allegation that NASE is a puppet of UICI shows that it is not an independent enterprise but merely an agent of UICI. Although NASE may be an agent of UICI for purposes of the alleged scheme, plaintiffs do not allege that NASE was UICI's agent for all purposes. NASE has a purported independent purpose as a nonprofit corporation for the self-employed. NASE therefore has sufficient structure as an independent corporation to constitute a RICO enterprise.

■ PFL also contends that the alleged Selling Machine enterprise is the same as the alleged pattern of racketeering activity. Plaintiffs are not required to allege that the enterprise has some function unrelated to the racketeering activity, but rather must allege that "it has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses." *Riccobene,* 709 F.2d at 223–24. This element

is satisfied if "the organization coordinated the commission of different predicate offenses on an ongoing basis." *Sanders,* 928 F.2d at 944. Here, assuming that plaintiffs can adequately allege the predicate acts, the Selling Machine enterprise coordinated the commission of these predicate acts to sell thousands of individual insurance policies. The Selling Machine enterprise is sufficiently distinct from the racketeering activity based on this clearinghouse or coordination function. *See id.; Riccobene,* 709 F.2d at 224.

■ PFL also argues that neither alleged enterprise is distinct from UICI or Jensen. Under RICO, the "person" and the "enterprise" engaged in racketeering activities must be different entities. *See Brannon v. Boatmen's First Nat'l Bank,* 153 F.3d 1144, 1146 (10th Cir.1998). Thus, a corporation cannot violate § 1962(c) absent an association with an entity other than itself, and it is insufficient to allege that the corporation's officers and employees constituted this other entity. *See Board of County Comm'rs v. Liberty Group,* 965 F.2d 879, 885–86 (10th Cir.), *cert. denied,* 506 U.S. 918, 113 S.Ct. 329, 121 L.Ed.2d 247 (1992). UICI and Jensen clearly are separate defendants from NASE, which is not named as a RICO defendant. The alleged control of NASE by UICI and Jensen does not establish that the entities were indistinguishable. Accordingly, plaintiffs' allegations meet the distinctness requirement for the alleged NASE enterprise. *See id.* In addition, the association-in-fact enterprise is comprised of separate corporations with presumably divergent economic interests. Plaintiffs therefore meet the distinctness requirement for the association-in-fact enterprise.[1]

**II. Fiduciary Duty Claims**

■ Plaintiffs allege that PFL, UICI and NASE breached their fiduciary duties

1. PFL also contends that plaintiffs lack standing because they have failed to allege that a violation of 18 U.S.C. § 1964(c) caused their injuries. Given that plaintiffs have failed to plead the predicate acts with particularity, the Court need not address this argument.

to plaintiffs by failing to disclose that NASE membership was not necessary to receive policy benefits. *See* Class Compl. Count III. PFL first maintains that this claim is time barred by the two year statute of limitations for such claims. *See* K.S.A. § 60–513(a)(4); *Boyle v. Harries,* 22 Kan.App.2d 686, 695, 923 P.2d 504, 510 (1996). Kansas applies a discovery rule in calculating the accrual date for tort claims. *See* K.S.A. § 60–513(b); *Rigby v. Clinical Reference Lab., Inc.,* 995 F.Supp. 1217, 1221 (D.Kan.1998). A cause of action accrues at the time the wrongful conduct causes substantial injury or when the fact of injury becomes reasonably ascertainable to the injured party. *See* K.S.A. § 60–513(b); *Dearborn Animal Clinic v. Wilson,* 248 Kan. 257, 263, 806 P.2d 997, 1002 (1991). Substantial injury means that plaintiff has sufficient ascertainable injury to justify an action for recovery of damages, regardless of the extent of injury. *Roe v. Diefendorf,* 236 Kan. 218, 222, 689 P.2d 855, 859 (1984).

PFL claims that plaintiffs should have known of their causes of action when the insurance policies were issued in 1992. As explained with respect to plaintiffs' RICO claim, the allegations in the complaints do not establish that plaintiffs would have discovered that NASE membership was not required, or have been put on inquiry notice of this fact, by reading their policies. Accordingly, the Court will not dismiss plaintiffs' fiduciary duty claim on this ground.

The Court also finds that PFL's alternative accrual dates are unsupported. PFL argues that the Kingston cause of action accrued in July 1993 (when plaintiffs realized that they had purchased extremely limited medical coverage) or on March 22, 1995 (when plaintiffs received a letter from the KID which summarized the investigation of the Kingstons' complaint). None of these facts, however, appear on the face of the complaint. Moreover, plaintiffs' fiduciary duty claim is based on PFL's failure to disclose that NASE membership was not required. Discovery of inadequate medical coverage would not necessarily give the Kingstons notice of the alleged concealment regarding NASE membership. Likewise, knowledge of the KID investigation into the inadequate medical coverage does not equate to knowledge of the alleged concealment regarding NASE membership. In sum, the allegations in the complaints are insufficient to establish that plaintiffs' fiduciary duty claim is time barred.

■■■■ Next, the Court reviews whether plaintiffs have sufficiently alleged a fiduciary relationship between PFL and plaintiffs. A fiduciary relationship may be created by contract, *e.g.,* attorney/client, or implied from the surrounding facts and circumstances. *See Denison State Bank v. Madeira,* 230 Kan. 684, 691, 230 Kan. 815, 640 P.2d 1235, 1241 (1982). Plaintiffs rely on an implied fiduciary relationship.[2] Whether an implied fiduciary relationship exists depends on the facts and circumstances of each case. *See id; Rajala v. Allied Corp.,* 919 F.2d 610, 614 (10th Cir. 1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991). Although the Kansas Supreme Court has not specifically defined a fiduciary relationship, it has set forth certain factors to consider in determining whether a fiduciary relationship exists:

A fiduciary relationship impacts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another. A fiduciary is in a position to have and exercise, and does

2. An insurance contract alone is insufficient to create a fiduciary relationship between the carrier and the policyholder with respect to first party claims. *See Spencer v. Aetna Life & Cas. Ins. Co.,* 227 Kan. 914, 922, 611 P.2d 149, 155 (1980); *Young v. State Farm Mut. Auto. Ins. Co.,* 951 F.2d 1262, 1992 WL 1690, at *6 (10th Cir. Jan.3, 1992). In fact, the Kansas Supreme Court has noted that an adversary relationship exists in such circumstances. *See Spencer,* 227 Kan. at 922, 611 P.2d at 155.

have and exercise influence over another. A fiduciary relationship implies a condition of superiority of one of the parties over the other. Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.

*Denison,* 230 Kan. at 692, 640 P.2d at 1241. All of these factors need not be present in any particular case. *See id.* at 693, 640 P.2d at 1241.

 In addition to these factors, a fiduciary relationship cannot be created by accident or inadvertence. *See Rajala,* 919 F.2d at 614 (citing *Wolf v. Brungardt,* 215 Kan. 272, 285, 524 P.2d 726, 736 (1974)). Ordinary day-to-day business transactions should not be converted into fiduciary relationships absent an intent by the parties to do so. *See Denison,* 230 Kan. at 696, 640 P.2d at 1243. The Tenth Circuit has emphasized that the "conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas law." [3] *Rajala,* 919 F.2d at 615; *see Denison* 230 Kan. at 696, 640 P.2d at 1243–44. Here, plaintiffs recognized this essential element of their claim by alleging that NASE and UICI voluntarily and explicitly assumed fiduciary duties to NASE members. *See* Class Compl. ¶ 26; Gottstein Compl. ¶ 37. Plaintiffs have not included any comparable allegation as to PFL. Accordingly, plaintiffs have failed to state a claim as to PFL.

Plaintiffs also have not alleged any facts which would justify special trust or confidence in PFL. Plaintiffs allege that PFL knew, encouraged and approved of NASE's representation that *NASE* had special negotiating power which it exercised on behalf of its members. *See* Class Compl. ¶ 64. PFL's approval of NASE's representation alone is insufficient to create a fiduciary duty. At most, plaintiffs have alleged that PFL knew and approved

of a fiduciary relationship between NASE and plaintiffs.

For these reasons, Count III of the Class Complaint as to PFL is dismissed for failure to state a claim upon which relief can be granted. As with the RICO claim, plaintiffs are granted leave to amend on or before June 30, 1999.

### III. Fraud Claim

 Plaintiffs allege that PFL, UICI and NASE fraudulently represented that prospective customers had to be NASE members before they could receive individual health policies. *See* Class Compl. Count II; Gottstein Compl. Count I. PFL contends that this claim is barred by the two year statute of limitations for fraud claims in Kansas. *See* K.S.A. § 60–513(a)(3). A cause of action for fraud accrues when plaintiff discovers or reasonably should have discovered the facts necessary to know of the fraud. *See id.; Robinson v. Shah,* 23 Kan.App.2d 812, 825, 936 P.2d 784, 794 (1997). For the reasons stated with respect to plaintiffs' RICO and fiduciary duty claims, the Court finds that the allegations in the complaints are insufficient to establish that plaintiffs' fraud claims are time barred.

PFL also maintains that plaintiffs failed to plead their fraud claim with particularity as required by Fed.R.Civ.P. 9(b). Pursuant to that rule, plaintiffs must describe with specificity "the circumstances constituting the fraud, including such matters as the time, place, and content of false representations, as well as the identity of the person making the representation and what was obtained or given thereby." *Smith v. MCI Telecom. Corp.,* 678 F.Supp. 823, 825 (D.Kan.1987); *see Seattle–First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986). In other words, plaintiffs must set forth the who, what, where, when and how of the alleged fraud.

---

**3.** The Kansas Supreme Court apparently recognizes an exception to this requirement where a party is under a disability or special disadvantage. *See Rajala,* 919 F.2d at 615

(and cases cited therein). Plaintiffs have not alleged, however, any basis for invoking this exception.

*See VNA Plus v. Apria Healthcare Group, Inc.*, 29 F.Supp.2d 1253, 1258 (D.Kan. 1998); *Nal II, Ltd. v. Tonkin*, 705 F.Supp. 522, 525–26 (D.Kan.1989). "Furthermore, when fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant." *Wiesner v. Willkie Farr & Gallagher*, 785 F.Supp. 408, 411 (S.D.N.Y.1992) (citing *Zerman v. Ball*, 735 F.2d 15, 22 (2d Cir. 1984)). These requirements may be somewhat relaxed where numerous representations are involved or where the defendant clearly is provided notice of the circumstances of the alleged fraud. *See VNA Plus*, 29 F.Supp.2d at 1263. Here, plaintiffs have not shown why the more relaxed standard should apply.

■ In the Class Complaint, plaintiffs allege that three corporate defendants made false representations. To satisfy the requirements of Fed.R.Civ.P. 9(b), plaintiffs must go beyond these bare allegations. Plaintiffs fail to specify the time and place of the statements, the specific individual(s) who made the alleged misrepresentations, and the form of the statements, *i.e.* oral or written. *See* Class Compl. ¶ 58. In the Gottstein Complaint, plaintiffs allege that the UICI agent made the false representations. *See* Gottstein Complaint ¶ 31. Again, plaintiffs are required to identify the time and place of the statements, the individual(s) who made the statements, and whether they were oral or written. For these reasons, Count II of the Class Complaint and Count I of the Gottstein Complaint are dismissed as to PFL.[4] Plaintiffs are granted leave to amend their complaints by June 30, 1999.

**IT IS THEREFORE ORDERED** that *Defendant PFL's Motion To Dismiss* (Doc. # 17) in Case No. 98–2339 filed February 1, 1999 be and hereby is **SUSTAINED.** Count I of plaintiffs' complaint is dismissed as to defendant PFL and

Counts IV and V are dismissed as to all defendants. Plaintiffs are granted leave to amend their complaint in accordance with this Memorandum and Order on or before **June 30, 1999.**

**IT IS FURTHER ORDERED** that *Defendant PFL's Motion To Dismiss* (Doc. # 14) in Case No. 98–2540 filed February 1, 1999 be and hereby is **SUSTAINED.** Counts I and II of plaintiffs' complaint are dismissed. Plaintiffs are granted leave to amend their complaint in accordance with this *Memorandum and Order* on or before **June 30, 1999.**

**IT IS FURTHER ORDERED** that *Defendant PFL's Motion To Dismiss* (Doc. # 19) in Case No. 98–2541 filed February 1, 1999 be and hereby is **SUSTAINED.** Counts II and III of plaintiffs' complaint are dismissed as to defendant PFL, and Counts VI and VII of plaintiffs complaint are dismissed as to all defendants. Plaintiffs are granted leave to amend their complaint in accordance with this *Memorandum and Order* on or before **June 30,1999.**

---

4. Defendant initially argued that the economic loss doctrine bars the Gottstein fraud claim. *See Memorandum In Support Of PFL Life Insurance Company's Motion To Dismiss* (Doc. # 20) filed Feb. 1, 1999 in Case No. 98–2339 at 18–19. Plaintiffs correctly note, however, that this doctrine does not bar fraud claims. *See Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, No. 87–1248–C, 1991 WL 177961, at *5 (D.Kan. Aug.9, 1991).