**Sheila BURDETT, Plaintiff,**

v.

**HARRAH'S KANSAS CASINO CORP., et al., Defendants.**

**No. CIV.A. 02–2166–KHV.**

United States District Court,
D. Kansas.

May 5, 2003.

---

**111.** Motion for Leave to Amend Complaint (Doc. 145) at p. 11.

**112.** *Frank,* 3 F.3d at 1365 (citations omitted).

See, also, 2003 WL 124665.

Stephen B. Small, Kansas City, MO, for Plaintiff.

Glenn B. Brown, Kenneth E. Holm, Baty, Holm & Numrich, PC, Kansas City, MO, for Harrah's Kansas Casino Corp., Harrah's Operating Co., Inc., Harrah's Entertainment, Inc., and Prairie Band Potawatomi Nation.

John G. Schultz, Franke, Schultz & Mullen, PC, Kansas City, MO, Michael A. Klutho, Bassford, Lockhart, Truesdell & Briggs, PA, Minneapolis, MN, for Edward T. Burke & Associates, PC, Edward T. Burke and Creditors Interexchange, Inc.

David Israel, Session, Fishman & Nathan, LLP, New Orleans, LA, Richmond M. Enochs, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for NCO Financial Systems, Inc.

Adam J. Prochaska, Darren K. Sharp, Laurence R. Tucker, Armstrong Teasdale, LLP, Kansas City, MO, for Telecheck Systems, Inc.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on the *Motion To Dismiss* (Doc. # 21) filed by Harrah's Kansas Casino Corporation, Harrah's Operating Company, Incorporated, Harrah's Entertainment, Incorporated and Prairie Band Potawatomi Nation on October 21, 2002; the *Motion To Dismiss* (Doc. # 41) filed December 6, 2002 by Edward T. Burke & Associates, P.C., Edward T. Burke, Esq. and Creditors Interchange, Incorporated; and *Defendant Telecheck Services, Inc.'s Motion To Dismiss* (Doc. # 46) filed December 19, 2002. For reasons stated below, the Court sustains the motion filed by Harrah's Kansas Casino Corporation, Harrah's Operating Company, Incorporated, Harrah's Entertainment, Incorporated and Prairie Band Potawatomi Nation and sustains in part the other two motions.

### Procedural History

On April 12, 2002, plaintiff filed suit against nine defendants: Harrah's Kansas Casino Corporation, Harrah's Operating Company, Incorporated and Harrah's Entertainment, Incorporated (collectively "Harrah's"); Edward T. Burke & Associates, PC and Edward T. Burke, Esq. (collectively "Burke"); Creditors Interchange, Incorporated ("CI"); NCO Financial Systems, Incorporated ("NCO"); Telecheck Systems, Incorporated ("Telecheck"); and Prairie Band Potawatomi Nation (the "Tribe"). Plaintiff alleges that defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.* and the Kansas Consumer Protection–Unconscionable Practice Act, K.S.A § 50–626 *et seq.* Plaintiff also alleges that defendants committed intentional and negligent infliction of emotional distress, causing her husband, Clarence Burdett, to commit suicide.[1] In addition, plaintiff seeks to enjoin collection and set aside the gambling debts of Mr. Burdett, and recover his gambling losses.

Harrah's and the Tribe seek dismissal under Fed.R.Civ.P. 12(b)(1), alleging lack of subject matter jurisdiction. Burke, CI and Telecheck seek dismissal under Fed. R.Civ.P. 12(b)(1) and 12(b)(6), alleging lack of jurisdiction and failure to state a RICO

---

1. *See Complaint For Damages, Declaratory Judgment, Injunction And Other Relief Arising From 1.) Violation Of Fair Debt Collection Practices Act[:] 2.) Racketeer Influenced Corrupt Organizations Act[:] 3.) Indian Reservation Gambling Act[:] 4.) Kansas Consumer Protection–Unconscionable Practice Act[:] 5.) Action To Set Aside Gambling Debts, To Enjoin Collection Thereof And To Recover Gambling Losses[:] 6.) Intentional And Negligent Infliction Of Emotional Distress Resulting In Wrongful Death ("Complaint") (Doc. # 1) filed April 12, 2002.*

claim. Plaintiff asserts that federal question jurisdiction is appropriate under 28 U.S.C. § .1331 because she raises federal claims under RICO, the FDCPA and the IGRA. She also claims that the Court has diversity jurisdiction under 28 U.S.C. § 1332.

### Legal Standards

### I. Rule 12(b)(1)—Subject Matter Jurisdiction

The Court may exercise jurisdiction only when specifically authorized to do so, *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir.1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F.Supp. 279, 281 (D.Kan.1995) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)); *see also* Fed.R.Civ.P. 12(h)(3). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against their jurisdiction. *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir.1999) (quoting *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir.1991)); *Basso*, 495 F.2d at 909. If federal jurisdiction is challenged, plaintiff bears the burden of showing why the case should not be dismissed, see *Jensen v. Johnson County Youth Baseball League*, 838 F.Supp. 1437, 1439–40 (D.Kan.1993), and must demonstrate by a preponderance of the evidence that retention of the case is appropriate. *United States v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir.1999). "Mere conclusory allegations of jurisdiction are not enough." *Id.*

Federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A plaintiff creates federal question jurisdiction by means of a well-pleaded complaint which establishes either that federal law creates the cause of action or that plaintiff's right to relief depends on resolution of a substantial question of federal law. *Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1165–66 (10th Cir.1999) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Federal courts also have original jurisdiction over civil actions "between ... citizens of different States" when the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332.

The standards that apply to a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) are well settled. Such motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir.1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). Harrah's and the Tribe have filed a motion to dismiss for lack of subject matter jurisdiction, alleging that the Tribe has exclusive jurisdiction to hear plaintiff's claims. Through evidence outside the complaint, defendants' motion attacks the factual accuracy of plaintiff's jurisdictional allegations.[2] In such cases, the Tenth Circuit has set forth the following standard:

---

**2.** For example, as evidence that the Tribe retains inherent civil jurisdiction over the conduct of non-Indians within the reservation who have engaged in consensual transactions with the Tribe, Harrah's and the Tribe rely on the Prairie Band Potawatomi Nation Constitution, the Tribal State Gaming Compact between the Tribe and the State of Kansas, and the Potawatomi Law and Order Code. *See* Ex. 1, 2, and 3 in *Defendants Harrah's And Potawatomi Nation Memorandum In Support Of Their Motion To Dismiss ("Harrah's & The Tribe's Memorandum")* (Doc. # 22) filed October 21, 2002.

[A] party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt,* 46 F.3d at 1003 (citations omitted). Because defendants' motion to dismiss raises a factual challenge to plaintiff's jurisdictional allegations, as opposed to a facial one, plaintiffs' allegations of material fact are not presumed to be true. *Stewart v. Mitchell Transp., Inc.,* 197 F.Supp.2d 1310, 1313 (D.Kan.2002).

Defendants also argue that the Tribe retains sovereign immunity. Arguments of sovereign immunity and subject matter jurisdiction are inextricably intertwined and sovereign immunity is therefore a matter of subject matter jurisdiction. *Hartman v. Golden Eagle Casino, Inc.,* 243 F.Supp.2d 1200 (D.Kan.2003) (citing *E.F.W. v. St. Stephen's Indian High Sch.,* 264 F.3d 1297, 1302 (10th Cir.2001)). "Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories. As an aspect of this sovereign immunity, suits against tribes are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress." *E.F.W.,* 264 F.3d at 1304 (quoting *Fletcher v. United States,* 116 F.3d 1315, 1324 (10th Cir. 1997)).

## II. Rule 12(b)(6) Standard—Failure To State A Claim

In ruling on a motion to dismiss for failure to state a claim, the Court accepts the veracity of all well-pleaded facts in plaintiff's complaint and views the facts and all reasonable inferences in the light most favorable to plaintiff. Rule 12(b)(6), Fed.R.Civ.P.; *see Hous. Auth. of Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir.1991); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail but whether plaintiff is entitled to offer evidence to support her claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The pleadings must be liberally construed. *Gas–A–Car, Inc. v. Am. Petrofina, Inc.,* 484 F.2d 1102, 1107 (10th Cir.1973). Although plaintiff need not precisely state each element of her claims, she must plead minimal factual allegations on those material elements that must be proved. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). A Rule 12(b)(6) motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### Factual Background

Plaintiff's complaint alleges the following facts:

Harrah's operates a gaming establishment for the benefit of the Prairie Band Potawatomi Nation, which is a federally recognized tribe of native American Indians. The gaming establishment, Harrah's Prairie Band Casino (the "casino"), is located on land which the United States Trust holds for the benefit of the Tribe.

Mr. Burdett visited the casino many times and cashed numerous personal checks which were dishonored on account

of insufficient funds. Plaintiff alleges that Mr. Burdett exchanged his checks for extensions of credit and refers to his insufficient funds checks as "debt" or "gambling debt." Harrah's and the Tribe engaged Telecheck, which in turn retained Burke, CI and NCO to collect the dishonored checks. On numerous occasions, Telecheck, Burke, CI and NCO communicated with Mr. Burdett to demand payment on the checks. After his death, they made such payment demands to plaintiff. While checks were outstanding, Harrah's continued to extend credit by accepting additional insufficient funds checks from Mr. Burdett.

Mr. Burdett had a pathological gambling disorder. He twice filed for bankruptcy and he was hospitalized for pathological gambling. He experienced marital discord and finally committed suicide on April 19, 2001. Harrah's sought to identify, dissuade and eliminate pathological gambling. It had observed Mr. Burdett engage in activities which indicated a pathological gambling disorder, *e.g.*, chasing losses, funding his gambling with borrowing and bad checks, gambling for long periods of time and using ATM machines and credit card cash advances. Nevertheless, it did not intervene.

### Analysis

### I. Motion To Dismiss By Harrah's And The Tribe

Harrah's and the Tribe ask the Court to dismiss plaintiff's complaint for lack of subject matter jurisdiction. Specifically, defendants argue that tribal courts have jurisdiction over plaintiff's claims, which arise from a consensual relationship which occurred on the reservation between Mr. Burdett and the Tribe, and that federal courts may not consider relief until plaintiff has exhausted all tribal court remedies. *Harrah's & The Tribe's Memorandum* (Doc. # 22). Plaintiff does not respond to these arguments. Instead, plaintiff argues that federal courts have jurisdiction to determine the validity of a Tribal–State gaming compact under the IGRA [3] and that by enacting 18 U.S.C. § 3243, Congress abrogated tribal immunity to the extent that a tribe commits a state or federal criminal offense, on or off tribal land. *Plaintiff's Response Opposing Potawatomie Tribe And Harrah's Motion To Dismiss* (Doc. # 40) filed December 6, 2002 at 1–2. Plaintiff also notes that she has not had a chance to engage in discovery, and asks that the Court defer ruling until she has had a chance to do so. Plaintiff does not specify what evidence she thinks is necessary to respond to defendants' motion.[4] Furthermore, defendants' motion presents legal rather than factual issues, and plaintiff has not identified any discovery which would shed light on the issues presented. The Court therefore declines plaintiff's request for discovery.

 The tribal exhaustion rule provides that "as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diver-

---

**3.** Plaintiff initially cites the IGRA, but then cites the "Indian Reservation Gaming Act" or "IRGA." The Court assumes that plaintiff intends to refer to the IGRA.

**4.** Under Rule 56(e), Fed.R.Civ.P., an affidavit of a party opposing summary judgment may establish that the party cannot, for reasons stated, present facts essential to justify the party's opposition. Under those circumstances the Court may order a continuance to permit discovery. Although the Court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1), plaintiff has not submitted an affidavit or any other documentation which justifies a delayed ruling. Further, as stated above, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. *See Holt,* 46 F.3d at 1003.

sity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies."[5] *Texaco, Inc. v. Zah,* 5 F.3d 1374, 1376 (10th Cir.1993) (citations omitted). Congress created the rule because of the federal government's "strong interest in promoting tribal sovereignty, including the development of tribal courts." *Id.* The rule applies to cases in which the tribal court's jurisdiction is at issue, and its application does not depend upon the existence of a pending action in the tribal forum. *Id.* at 1376 (citations omitted). The tribal exhaustion rule, however, does not deprive federal courts of subject matter jurisdiction. "Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite." *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16 n. 8, 107 S.Ct. 971, 94 L.Ed.2d 10. When, as here, the dispute arises on the tribal reservation, these policies usually dictate that plaintiff must exhaust tribal remedies before resorting to federal court. *Id.* at 1378 (citing *Smith v. Moffett,* 947 F.2d 442, 445 (10th Cir.1991) and *Crawford v. Genuine Parts Co.,* 947 F.2d 1405, 1408 (9th Cir.1991) ("When the dispute is a 'reservation affair,' ... there is not discretion not to defer.")).[6]

■ Unless the "assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction," inquiry into the existence of tribal jurisdiction "should be conducted in the first instance in the Tribal Court itself." *Nat'l Farmers Union,* 471 U.S. at 856 n. 21, 105 S.Ct. 2447 (citations omitted). Whether the federal action should be dismissed, however, or merely held in abeyance pending the development of tribal court proceedings, is a question that should be addressed in the first instance by the district court. *Id.* at 857, 105 S.Ct. 2447.

Plaintiff does not allege or argue that she has exhausted tribal remedies, or that exhaustion is not required or should be excused. Similarly, she does not allege or argue that the assertion of tribal jurisdiction is motivated by bad faith, that the action is "patently violative of express judicial prohibitions" or that exhaustion would be futile. Plaintiff's argument is admittedly difficult to follow, as she cites cases with no analysis or explanation. Plaintiff apparently does not disagree that exhaustion is required—which it clearly its—but simply prefers that the Court retain jurisdiction pending the exhaustion of tribal remedies and not dismiss her claims outright. The Court must therefore decide whether it even has jurisdiction under the IGRA and 18 U.S.C. § 3243.

### A. The IGRA

Plaintiff's complaint alleges that the Tribal–State compact between the Tribe and the State of Kansas, which purportedly authorizes defendants to operate the casino on Indian property, is invalid because Kansas law does not allow class III gaming. Plaintiff argues that "[f]ederal courts indisputably have jurisdiction to determine the validity of a tribal state [sic]

---

**5.** The Supreme Court has identified three policy concerns which support the tribal exhaustion rule: "(1) to further the congressional policy of supporting tribal self-government; (2) to promote the orderly administration of justice; and (3) to obtain the benefit of tribal expertise." *Zah,* 5 F.3d at 1377–78 (citing *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 856–57, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985)).

**6.** In contrast, when the dispute involves non-Indian activity off the reservation, tribal exhaustion rule policies are not served. *Zah,* 5 F.3d at 1378.

gaming compact under IGRA. IGRA is a federal statute, the interpretation of which presents a federal question suitable for determination by a federal court." *Plaintiff's Response Opposing Potawatomie Tribe And Harrah's Motion To Dismiss* (Doc. #40) filed December 6, 2002 at 2.

The IGRA establishes a comprehensive regulatory regime for tribal gaming activities on Indian lands. The Indians' long-standing rights and interests in controlling activities on their tribal lands, and the States' correspondingly limited power to regulate activities on tribal lands except as authorized by Congress, are core principles underlying the IGRA. *See generally Cal. v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) (Supreme Court decision to which Congress responded in enacting IGRA). The IGRA establishes federal jurisdiction over: (1) suits by a tribe, arising from a state's failure to negotiate for the purpose of entering into a Tribal–State compact; (2) suits by a state or tribe to enjoin a class III gaming activity in violation of a Tribal–State compact; and (3) suits by the Secretary of the Interior to enforce the IGRA regarding negotiations between a state and a tribe. 25 U.S.C. § 2710(d)(7)(A). Plaintiff's complaint does not allege a cause of action within any of these categories, and she cites no authority for the proposition that she possesses any private right of action which this Court has jurisdiction to entertain.

The fact that plaintiff's claims may require the Court to decide federal legal questions under the IGRA is not sufficient, standing alone, to demonstrate the existence of federal question jurisdiction. *Morris v. City of Hobart,* 39 F.3d 1105,

1111 (10th Cir.1994) (citation omitted) (whether case turns on substantial question of federal law depends on whether Congress evidenced intent to provide federal forum);[7] *see also Merrell Dow Pharms., Inc. v. Thompson,* 478 U.S. 804, 817, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (complaint alleging violation of federal statute as element of state cause of action, when Congress has determined not to provide private federal cause of action for violation, does not state claim arising under Constitution, laws or treaties of United States); *Nicodemus v. Union Pac. Corp.,* 318 F.3d 1231, 1236 (10th Cir.2003) (citing *Merrell Dow,* 478 U.S. at 812, 106 S.Ct. 3229) (without federal private right of action, "it would flout congressional intent to provide a private federal remedy for the violation of the federal statute ... [and] it would similarly flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal-question jurisdiction."); *McQuerry v. Am. Med. Sys., Inc.,* 899 F.Supp. 366, 370 (N.D.Ill.1995) (where no federal private right of action, complaint does not raise federal question). The Court therefore rejects plaintiff's argument that it has federal question jurisdiction under the IGRA.

**B. 18 U.S.C. § 3243**

■ Plaintiff also argues that the Court has jurisdiction by virtue of 18 U.S.C. § 3243. Plaintiff's reliance on Section 3243 is misplaced, however, because that statute relates to jurisdiction over criminal rather than civil proceedings. *Negonsott v. Samuels,* 507 U.S. 99, 100, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). Section 3243 provides:

---

**7.** Although complete pre-emption is not implicated in this case, it is an exception to the well-pleaded complaint rule. In *Metropolitan Life Insur. Co. v. Taylor,* the Supreme Court recognized that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

[j]urisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State.

Because this is a civil proceeding, Section 3243 does not apply.

Because plaintiff has not demonstrated subject matter jurisdiction over her claims against Harrah's and the Tribe, the Court has no good reason to hold those claims in abeyance pending exhaustion of tribal remedies. The Court therefore sustains defendants' motion to dismiss.

## II. Motions To Dismiss By Burke, CI and Telecheck

Burke, CI and Telecheck seek dismissal of plaintiff's complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), arguing that this Court lacks jurisdiction because plaintiff does not state a federal claim on which relief may be granted.[8] Two inquiries are necessary when ruling on such a motion to dismiss. First, based on the pleadings, the Court must determine whether it has jurisdiction. *See Clelland v. Glines,* 2002 WL 31855267, at *1 (D.Kan. Nov.6, 2002). Next, if it does, the Court must decide whether plaintiff has plead the elements of a federal claim. *Id.* at *2.

Plaintiff has met her first burden because she brings causes of action arising under two federal statutes, the FDCPA, 15 U.S.C. § 1692 *et seq.,* and RICO, 18 U.S.C. § 1961 *et seq.* As to the FDCPA, 15 U.S.C. § 1692k(d) provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appro-

priate United States district court ... or in any other court of competent jurisdiction." As to RICO, 18 U.S.C. § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." Plaintiff also alleges that defendants violated the Kansas Consumer Protection–Unconscionable Practice Act, K.S.A. § 50–626 *et seq.,* and that they committed intentional and negligent infliction of emotional distress. Under 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over state claims which it would not otherwise have the power to hear. If the Court has federal question jurisdiction over plaintiff's FDCPA or RICO claims, the Court may retain jurisdiction over plaintiff's remaining state law claims. *See Thatcher Enter. v. Cache County Corp.,* 902 F.2d 1472, 1478 (10th Cir.1990). The Court therefore must determine whether plaintiff has stated claims on which relief may be granted under the FDCPA and RICO.

Burke, CI and Telecheck claim that plaintiff cannot prevail under the FDCPA because she did not file suit within one year of the date of the alleged violation. Telecheck also argues that plaintiff does not have standing to assert a claim under the FDCPA. As to RICO, defendants argue that plaintiff does not allege facts sufficient to state a claim. Finally, defendants argue that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss those claims for lack of complete diversity.

### A. The FDCPA

Plaintiff claims that each defendant violated the FDCPA through abusive and un-

---

**8.** To demonstrate that she has valid causes of action under the FDCPA and RICO, plaintiff has attached 62 pages of exhibits. Those exhibits are not properly authenticated under D.

Kan. Rule 56.1(d). The Court therefore declines to convert Burke, CI and Telecheck's motions to dismiss to motions for summary judgment.

fair debt collection communications and illegal collection demands. Burke, CI and Telecheck argue that plaintiff filed her claim outside the one-year statute of limitations set forth in 15 U.S.C. § 1692k(d). As noted, Telecheck also argues that plaintiff lacks standing to assert a claim under the FDCPA. Plaintiff responds that she filed suit within the limitations period and that as a "consumer," she has standing under the FDCPA.

By way of statutory definitions, plaintiff's complaint alleges that Burke, CI, Telecheck and NCO are "debt collectors" within the definition of 15 U.S.C. § 1962(a)(6); that their collection activity consisted of telephone calls and collection letters directed at plaintiff and Mr. Burdett; that plaintiff and Mr. Burdett were "consumers" within the definition of 15 U.S.C. § 1962(a)(3); that Harrah's and the Tribe are "creditors" within the definition of 15 U.S.C. § 1692(a)(4); and that defendants engaged in "communication" as defined by 15 U.S.C. § 1692(a)(2). Plaintiff's complaint alleges various violations of the FDCPA: (1) that defendants violated 15 U.S.C. § 1962(d) by communicating collection demands to plaintiff and Mr. Burdett in a harassing, abusive and oppressive manner, (2) that defendants violated 15 U.S.C. § 1692(c)(c) by refusing to cease communications after plaintiff and Mr. Burdett asked them to do so and plaintiff refused to pay the debts; (3) that defendants violated 15 U.S.C. § 1692(e)(2)(A) by falsely representing the character, amount and legal status of Mr. Burdett's debts; (4) that defendants violated 15 U.S.C. § 1692(e)(5) by threatening legal action to collect gambling debts which are void as a matter of public policy under Kansas law; (5) that defendants violated 15 U.S.C. § 1692(f)(1) by using unfair and unconscionable means to collect gambling debts which are not legally enforceable in Kansas; (6) that defendants violated 15 U.S.C. § 1692(e)(11) by failing to "Mirandize" the Burdetts before engaging in telephone communications with them; and (7) more vaguely, that 15 U.S.C. § 1692(k) imposes civil liability on defendants for violating the FDCPA. *Complaint* (Doc. # 1) at 15–17.[9] Plaintiff's complaint does not more specifically identify any FDCPA violation or plead the date when it occurred.

The first inquiry is whether plaintiff has standing to sue under the FDCPA. Telecheck argues that plaintiff does not, because defendants addressed their collection letters to her husband. Telecheck relies on *Dewey v. Associated Collectors Inc.*, 927 F.Supp. 1172 (W.D.Wis.1996), for the proposition that a wife ordinarily does not have standing to assert a FDCPA violation based on collection efforts aimed at her spouse. Plaintiff's complaint, however, alleges that defendants directed telephone calls and collection letters to her in a harassing, abusive and oppressive manner, refused to honor her request to cease and desist, and failed to "Mirandize" her before engaging in illegal debt collection efforts by telephone. If these allegations are actionable under the FDCPA, plaintiff has standing to assert them.

Defendants also argue that the one-year limitations period bars plaintiff's claim under the FDCPA. The FDCPA provides that an action must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Burke and CI argue that plaintiff commenced suit on August 30, 2002, which was more than one year after Mr. Burdett's death. De-

---

**9.** Plaintiff refers to code sections that do not exist. For example, she cites 15 U.S.C. § 1962, which was repealed in 1994, and Sections 1692(a) through (k), which do not exist. The Court assumes that plaintiff intended to cite the FDCPA sections: 15 U.S.C. §§ 1692a, 1692c, 1692d, 1692e, 1692f and 1692k.

fendants concede that plaintiff filed her complaint on April 12, 2002, but insist that the original summons became inoperative due to the passage of time. *See* Rule 4, Fed.R.Civ.P. This argument is without merit. Under Rule 4(m), the Court "may dismiss the case if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint" or, as here, the Court may "direct that service be effected within a specified period of time."

On September 26, 2002, the Court extended to October 10, 2002 the time for plaintiff to serve process on Telecheck, Burke and CI. *Order* (Doc. # 10). Plaintiff accomplished service of process within that time. Accordingly, her suit commenced on April 12, 2002, and the statute of limitations does not prevent plaintiff from suing for violations which occurred in the preceding year.

The chronology of events, as set forth in plaintiff's complaint, suggests that large portions of plaintiff's claim occurred more than one year before plaintiff filed suit and may be barred. *See Whayne v. United States Dep't of Educ.*, 915 F.Supp. 1143, 1145 (D.Kan.1996). The complaint, however, does not allege specific violations or state when they occurred. The Court therefore directs plaintiff to file an amended complaint on or before **May 16, 2003** which specifically identifies each FDCPA violation, the party who committed the violation, and the date of the violation. Also, because plaintiff's current complaint is anything but a "short and plain statement of the claim," plaintiff shall comply with D. Kan. Rule 15.1 and Rule 8(a), Fed.R.Civ.P. The Court overrules without prejudice the motions to dismiss plaintiff's FDCPA claims against Burke, CI and Telecheck.

Those motions may be re-filed in response to plaintiff's more definite statement of her claim in her amended complaint.

## B. Failure To State A Claim Under RICO

Plaintiff's complaint alleges that all defendants violated RICO by engaging in a pattern of racketeering activity and repeatedly attempting to collect unlawful gambling debts. *Complaint* (Doc. # 1). Plaintiff alleges that defendants engaged in two or more predicate acts which constitute a "pattern of racketeering" in violation of 18 U.S.C. §§ 1962(b) and (c), and that defendants conspired to violate Section 1962. Specifically, plaintiff alleges that (1) in violation of 18 U.S.C. § 1955, Harrah's and the Tribe repeatedly acquired and operated illegal gambling operations, and (2) in violation of 18 U.S.C. § 1961(6), Burke, CI, Telecheck and NCO repeatedly attempted to collect unlawful gambling debts acquired or maintained by Harrah's and the Tribe.[10] *Id.* at 18–20. Plaintiff claims that 18 U.S.C. § 1964(c) provides a private civil cause of action under RICO because she sustained injury to her property on account of these violations. *Id.* at 20.

Defendants seek dismissal, arguing that plaintiff has not alleged facts which state a RICO claim. Specifically, defendants argue that (1) plaintiff does not state a claim under Section 1962(b) because she does not allege that they acquired an interest in or control of an illegal gambling enterprise or a direct relationship between them and the casino; (2) plaintiff does not state a claim under Section 1962(c) because she does not allege that they participated in the affairs of an illegal enterprise or that

---

**10.** Plaintiff also alleges that Class III gambling is illegal in Kansas, that defendants operated an illegal gambling enterprise in violation of state and federal law, that gambling debts are illegal, that collection of such debts is therefore unlawful and that defendants' illegal gambling enterprise engaged in interstate commerce. *Complaint* (Doc. # 1) at 18–20.

an illegal enterprise employed or associated with them; and (3) plaintiff does not state a conspiracy claim under Section 1962(d) because she does not adequately allege an underlying RICO claim. *Defendants Edward T. Burke & Associates, P.C., Edward T. Burke, Esq. And Creditors Interchange, Inc.'s Memorandum Of Law In Support Of Motion To Dismiss* (Doc. # 42) filed December 6, 2002 at 7–10; *Memorandum Of Law In Support Of Defendant Telecheck Services, Inc.'s Motion To Dismiss* (Doc. # 47) filed December 19, 2002 at 5.

■ RICO provides a private civil action to recover treble damages for injury sustained by reason of a violation of its substantive provisions. 18 U.S.C. § 1964(c). The major purpose of RICO is to attack the "infiltration of organized crime and racketeering into legitimate organizations," S.Rep. No. 91–617, at 76. RICO therefore takes aim at "racketeering activity." [11] *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 481, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). To survive a motion to dismiss plaintiff must plead all elements of a RICO violation: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Cadle Co. v. Schultz,* 779 F.Supp. 392, 396 (N.D.Tex. 1991). Plaintiff may do so, however, in accordance with the liberal notice pleading requirement of the Federal Rules of Civil Procedure. Rule 8, Fed.R.Civ.P. [12] While plaintiff need only give fair notice in her complaint, the list of elements "is deceptively simple ... because each concept is a term of art which carries its own inherent requirements of particularity." *Id.* For example, "conduct" embodies the requirements of one or more of the four substantive violations set out in §§ 1962(a) through(d). *Id.*

### 1. Plaintiff's Claim Under Section 1962(b)

■ Section 1962(b) provides that it shall be unlawful

> for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which engaged in, or the activities of which effect, interstate or foreign commerce.

18 U.S.C. § 1962(b). To state a claim under Section 1962(b), plaintiff must articulate how each defendant acquired or maintained an interest in the enterprise, or acquired or maintained control of the enterprise, by means of racketeering or unlawful debt collection activity. *Cadle Co.,* 779 F.Supp. 392. In that regard, the complaint alleges that Burke and CI engaged in unlawful debt collection activity. More specifically, it alleges that Burke "engaged in the collection of gambling debts arising at Harrah's," and that CI "engaged in the collection of unlawful ... gambling debts in Kansas." As to Telecheck, it alleges that Telecheck "acted as a credit grantor to [Mr.] Burdett on behalf of Harrahs [sic] ... in approving requests for credit[.]" *Complaint* (Doc. # 1) at 3–4. Significantly, the complaint does not allege that de-

---

**11.** RICO defines "racketeering activity" as:
(A) any act or threat involving ... gambling, ... which is chargeable under State law and punishable by imprisonment for more than one year, (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1955 (relating to the prohibition of illegal gambling businesses).

18 U.S.C. § 1961(1).

**12.** To comply with the liberal notice pleading requirements of Fed.R.Civ.P. 8(a)(2), a complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

fendants acquired or maintained an interest in or control of an enterprise, which plaintiff defines as an "illegal gambling enterprise." Plaintiff does not oppose defendants' motion to dismiss her claim under Section 1962(b). The Court therefore dismisses plaintiff's Section 1962(b) claims against Telecheck, Burke and CI. It also orders plaintiff to show cause in writing by **May 16, 2003** why it should not dismiss her Section 1962(b) claim against NCO, the sole remaining defendant to which the claim applies.

### 2. Plaintiff's Claims Under Section 1962(c)

Section 1962(c) provides that it shall be unlawful

> for any person employed by or associated with any enterprise engaged in, or the activities of which effect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To survive a motion to dismiss, plaintiff must allege facts sufficient to establish (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275; *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir.2002); *BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1100 (10th Cir.1999). Essentially, plaintiff must allege that the enterprise employed defendants or that defendants were associated with the enterprise and directly or indirectly participated in the conduct of enterprise affairs through a pattern of racketeering or collection of an unlawful debt. *See United States v. Bledsoe*, 674 F.2d 647, 664–65 (8th Cir.1982). If plaintiff does not allege facts sufficient to establish any one of these elements, the complaint must be dismissed. *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275.

Plaintiff's complaint alleges that defendants violated Section 1962(c) by conducting or participating in the conduct of an illegal gambling enterprise through a pattern of racketeering activity and collection of unlawful debts. *Complaint* (Doc. # 1) at 20. Defendants argue that the complaint does not allege conduct sufficient to create liability under Section 1962(c), *i.e.* that they participated in the operation or management of the gambling enterprise. Specifically, defendants argue that liability under Section 1962(c) extends only to persons associated with or employed by an enterprise and that only individuals who participate in the operation or management of the enterprise may be held liable. Defendants also argue that as a matter of law, the mere provision of professional services is insufficient to establish conduct of or participation in the enterprise. *Burke & CI Memorandum* (Doc. # 42) at 9–10.

To address defendants' motion, the Court analyzes what constitutes "conduct" under Section 1962(c). In *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court held that "conduct" requires an element of direction, and that in order "to conduct or participate" in the conduct of enterprise affairs, "one must have some part in directing those affairs." *See also VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, 29 F.Supp.2d 1253, 1259 (D.Kan.1998). Liability is not limited to upper management; it extends to enterprise participants who are under the direction of upper management or who exert control over the enterprise. *Reves*, 507 U.S. at 184, 113 S.Ct. 1163. Although liability may extend to any person employed by or associated with the enterprise, it only reaches outsiders if they are associated with the enterprise and partici-

pate in the conduct of enterprise affairs, *i.e.* they operate or manage the affairs of the enterprise and not solely their own affairs. *Id.* at 185, 113 S.Ct. 1163. Plaintiff must therefore allege facts which establish the requisite relationship. *See VNA Plus,* 29 F.Supp.2d at 1259.

In *VNA Plus,* this Court denied Apria's motion for judgment on the pleadings under RICO, holding that VNA Plus had adequately alleged participation in a RICO enterprise. *Id.* at 1259. VNA Plus and Apria had executed contracts whereby Apria agreed to bill Medicare, Medicaid and third-party payors on behalf of VNA Plus. *Id.* at 1258. VNA Plus and Apria had also agreed that Apria would sell products and related services of VNA Plus. The Court compared this relationship to the relationship in *Reves v. Ernst & Young,* where the Supreme Court found that an accounting firm which was hired to audit and value company assets did not participate in the company's affairs within the meaning of RICO. *Id.* (citations omitted). In *VNA Plus,* the Court held that Apria was "at the center of the alleged RICO enterprise." *Id.* It was involved in day-to-day operations of the enterprise and had direct control over the billing services and practices of the enterprise. *Id.* Because VNA Plus alleged that Apria had "some part in directing the affairs of the ... enterprise," it had adequately alleged that Apria participated in the RICO enterprise. *Id.*

Here, plaintiff's complaint does not allege control or participation. Plaintiff alleges only that Telecheck, Burke and CI engaged in the collection of gambling debts which arose at the casino. Plaintiff also vaguely alleges that defendants acted "on behalf of the illegal gambling enterprise." *Complaint* (Doc. # 1) at 3–4 and 20. The complaint, however, does not allege facts which establish that Telecheck, Burke or CI conducted or participated in the conduct of the "illegal gambling enter-

prise," or that they participated in its management or operation. The complaint does not allege that defendants had control of day-to-day activities of the enterprise or that they had any part in directing its affairs. The Court therefore dismisses plaintiff's claims against Telecheck, Burke and CI under Section 1962(c) and orders plaintiff to show cause in writing by **May 16, 2003** why it should not dismiss her Section 1962(c) claim against NCO, the sole remaining defendant to which the claim applies.

### 3. Plaintiff's Claims Under Section 1962(d)

Plaintiff alleges that defendants conspired to violate 18 U.S.C. § 1962 in the acquisition and collection of unlawful gambling debts. A RICO conspiracy claim under Section 1962(d) must be dismissed when plaintiff does not state a claim for violations under Sections 1962(a) through (c). *See Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.,* 941 F.2d 1220, 1232 (D.C.Cir.1991); *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 495 (6th Cir. 1990). The Court therefore dismisses plaintiff's Section 1962(d) claim against Telecheck, Burke and CI, and orders plaintiff to show cause in writing by **May 16, 2003** why it should not dismiss her Section 1962(d) RICO claim against NCO, the sole remaining defendant to which the claim applies.

### C. Plaintiff's State Law Claims

Under 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over plaintiff's state claims if the court has federal question jurisdiction, but if the court dismisses all federal question claims, it may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). Here, for now, the Court exercises federal question jurisdiction over plaintiff's

FDCPA claims. The Court therefore exercises supplemental jurisdiction over plaintiff's state law claims. It may decline to do so later, if all federal claims are dismissed.[13]

**IT IS THEREFORE ORDERED** that the *Motion To Dismiss* (Doc. # 21) filed October 21, 2002 by Harrah's Kansas Casino Corporation, Harrah's Operating Company, Incorporated, Harrah's Entertainment, Incorporated and Prairie Band Potawatomi Nation, be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that the *Motion To Dismiss* (Doc. # 41) filed December 6, 2002 by Edward T. Burke & Associates, P.C., Edward T. Burke, Esq. and Creditors Interchange, Incorporated, be and hereby is **SUSTAINED in part** and **OVERRULED in part.** Defendants' motion is **OVERRULED** without prejudice as to plaintiff's FDCPA claim. Defendants' motion is **SUSTAINED** as to plaintiff's RICO claims.

**IT IS FURTHER ORDERED** that *Defendant Telecheck Services, Inc.'s Motion To Dismiss* (Doc. # 46) filed December 19, 2002, be and hereby is **SUSTAINED in part** and **OVERRULED in part.** Defendant's motion is **OVERRULED** without prejudice as to plaintiff's FDCPA claim. Defendant's motion is **SUSTAINED** as to plaintiff's RICO claims.

**IT IS FURTHER ORDERED** that plaintiff file an amended complaint on or before **May 16, 2003** which shall specifically identify each FDCPA violation, the party who committed the violation, and the date of the violation. Plaintiff is also directed to comply with the requirements of D. Kan. Rule 15.1 and Rule 8(a), Fed.

R.Civ.P. Burke, CI and Telecheck may refile their motions to dismiss plaintiff's FDCPA claims in response to plaintiff's more definite statement of her claim.

**IT IS FURTHER ORDERED** that plaintiff show cause in writing on or before **May 16, 2003** why the Court should not dismiss her claims under RICO, 18 U.S.C. § 1961 *et seq.* against NCO Financial Systems, Incorporated, the sole remaining defendant to which the claims apply.

---

13. In her complaint, plaintiff alleges that the Court has diversity jurisdiction over her state law claims. *See* 28 U.S.C. § 1332. Burke, CI and Telecheck contend that the parties are not truly diverse because plaintiff and Harrah's Kansas Casino Corporation ("HKCC") are both citizens of Kansas and the Tribe is not a citizen of any state. The Court is not persuaded by plaintiff's superficial analysis of the diversity issues but need not address those issues at this time.